## Joseph Lumaghi v. John Voytilla.

1. MINES AND MINING—*Provisions of Sec. 28b of the Miners Act Applies to Persons Entering and Leaving the Mine.*—Sec. 28b of Chap. 93, Hurd's R. S. 1901, providing that a good and sufficient light be maintained at the bottom of the shaft, so that persons coming to the bottom may discern the cage and objects in the vicinity, applies to the safety of men while entering and leaving the mine, and has no reference to the safety of persons traveling along the entries in the mine.

**Trespass on the Case.**—Personal injury. Appeal from the Circuit Court of Macoupin County; the Hon. ROBERT B. SHIRLEY, Judge, presiding. Heard in this court at the November term, 1901. Reversed and remanded. Opinion filed February 19, 1902.

PERCY WERNER, attorney for appellant; W. P. CLARKSON, ESQ., of counsel.

BELL & BURTON, attorneys for appellee.

MR. JUSTICE WRIGHT delivered the opinion of the court.

This was an action in case for injuries received in the coal mine of appellant in consequence of the negligence of the latter, while appellee was engaged in the performance of his duties in such mine as driver of coal cars. The recovery was for $1,000, and to reverse the judgment appellant brings this appeal, and argues chiefly that the verdict is contrary to the law and the evidence.

The specific negligence alleged against appellant is that he failed to maintain a good and sufficient light at the bottom of the shaft of the mine, so that persons coming to the bottom might discern the cage and objects in the vicinity, and that while appellee was approaching the bottom of the shaft on a loaded car drawn by a mule, and when in the vicinity of the bottom of the shaft, by reason of the darkness resulting from the failure to maintain such light, he was pushed against other coal cars there standing and thereby injured.

It appears from the evidence that while appellee was in the discharge of the ordinary duties of a driver, hauling

loaded cars over the tracks laid in the entries of the mine, to the bottom of the shaft, from a room at a distance of nearly 2,000 feet from the shaft where the coal was hoisted to the surface, and being within sixty feet of the bottom of the shaft in an entry leading thereto, where it was customary to detach the mule without stopping the car, and allow the car to reach its destination by its own inertia, appellee detached the mule, turned it aside, while still himself remaining upon the car, which latter, continuing in motion, ran against another car remaining upon the track, unseen by appellee, whereby he was caught between the cars and his leg was broken. Appellee had fastened upon his hat the usual light for drivers within the mine, which, away from the shaft light, was all the light the drivers were accustomed to have. There was a light at this time at the bottom of the shaft, which it was claimed was insufficient to light objects in the vicinity of the shaft, and this was the principal controverted fact. Upon the averments of the declaration, the admission of evidence and the instructions of the court, the case was tried upon the theory that the statute, section 28(b), (Hurd, Ed. 1901, p. 1218), wherein it is provided that as long as there are men underground in any mine, the operator shall maintain a good and sufficient light at the bottom of the shaft thereof, so that persons coming to the bottom may clearly discern the cage and objects in the vicinity, was intended for the benefit of appellee while he was working in the mine at his usual labor. And whether the provisions of the statute to which we have referred are to be so extended, or whether they are to be restricted for the benefit of such as come to the bottom for the purpose of leaving the mine, is the question to be determined in the decision of the case. When all the provisions of section 28, to which we have referred, are considered, it seems to us that the plain intent of the legislature, by the provisions therein contained, was to prescribe rules and regulations for the safety of the men while entering and leaving the mine, and this is so clearly pointed out by the first paragraph (a) that it seems that argument to prove it becomes

almost pedantry. From the opening paragraph to the closing one, every line and word, wherein effective action is required, relate to the hoisting or lowering of men or cages. There shall be a competent man at the top and the bottom of the shaft to attend signals, enforce the rules governing the carriage of men on cages, and who shall be at their respective posts of duty at least a half hour before the hoisting of coal begins in the morning, and remain for half an hour after hoisting ceases for the day. Whenever the hoisting or lowering of men occurs before daylight or after dark, or when the landing is otherwise obscured, there must always be maintained at such landing a light sufficient to show the landing and surrounding objects distinctly; followed by a similar provision affecting the bottom, to which we have already alluded, and being the one we are considering. And these paragraphs are followed still by two others, both relative to the safety in hoisting and lowering men. So that it is not perceived how or wherein any of these statutory provisions are applicable, or were intended to be applied to the appellee, in the situation he was placed at the time of his injury. He was not approaching the bottom to be hoisted, but was then engaged in his ordinary duties. He was not coming to the bottom at all, but his ordinary duties required him to stop in the entry, from sixty to ninety feet away from the bottom. If, then, the purposes of the statute did not apply to the conditions in which appellee found himself, he had no right to rely upon the absence of a sufficient light at the bottom of the shaft to enable him to see the car upon the track, if such was the case. It has been held that persons for whose benefit a statute was intended can have no rights in consequence of the omission by others to comply with its provisions. W., St. L. & P. Ry. Co. v. Neikirk, 15 Ill. App. 172; C., R. I. & P. Ry. Co. v. Eminger, 114 Ill. 79.

From what we have already said, it follows that the theory upon which the declaration proceeds, and upon which the case was tried, and the verdict rests, is not within the legislative design as delineated by its enactment, and the

C. & A. Ry. Co. v. Corson.

verdict is therefore contrary to the law and the evidence of the case. There is no force in the point made by appellee that the bill of exceptions does not show a proper exception to the overruling of the motion for a new trial. We think the exception is shown to have been taken at the proper time.

The judgment of the Circuit Court will be reversed and the cause remanded for further proceedings in consonance with the views herein expressed.