# BARRON, Appellant, v. MISSOURI LEAD AND ZINC COMPANY.

### Division Two, February 24, 1903.

1. **Negligence:** STATUTORY ACTION. The right of a mother, dependent. for support on a son killed in a mine, to maintain a suit, for damages for his negligent death is purely statutory, and she must by her petition bring herself within the statutory requirements or it will be held that the petition does not state a cause of action.

2. ————: ————: BY DEPENDENT MOTHER FOR LOSS OF SON: MINING STATUTE: HOISTERMAN. A petition which bases a mother's right to recover for damages for negligently killing a son upon whom she was dependent for support, which charges the company to have been negligent in the "construction of a derrick and hoister," "in failing to put a roof over his derrick," "in the construction of a brake, the said brake being defectively and negligently placed on said derrick," and in the fact that said derrick was constructed of "rotten and defective and insufficient timber, full of nail holes. and knots," does not state a cause of action under a statute which gives to the person "dependent for support on the person killed," a right to sue for the loss sustained in case the accident is due to the failure of the mining company to provide "safe means of hoisting or lowering persons on a cage covered with boiler iron" and requiring "such cage to be furnished with spring catches, intended and provided to prevent the consequences of cable breaking." Such petition charges none of the negligent acts mentioned in the statute.

3. ————: ————: ————: ————: APPLICATION OF STATUTE. The mining statute has in view the protection of persons being lowered and hoisted in the shaft, and does not apply to a "hoisterman" engaged at the top of the shaft in lowering or hoisting the cage for others.

Appeal from Jasper Circuit Court.—*Hon. Jos. D. Perkins,* Judge.

AFFIRMED.

*Thomas & Hackney* and *Grayston & Yoss* for appellant.

(1) The obvious intent of the Legislature, as gathered from the whole article relating to the safety and inspection of mines was to place an obligation on the mine operator to furnish his servants with safe machinery and although that intention may not have been precisely expressed, it is plainly perceivable, from the act itself, and that intention should be enforced and carried out and made to control the strict letter. Secs. 8811, 8818, 8819, R. S. 1899; State v. King, 44 Mo. 283; Sutherland on Statutory Construction (1891), secs. 237, 238, 239 and 241.   (2) The statute permitting any person dependent for support upon the person killed to maintain a suit against him whose negligence caused the death, is remedial in the strictest sense of the word, and should receive a favorable construction.   Merkle v. Bennington Tp., 56 Mich. 156; s. c., 24 N. W. 776; Shelby County v. Searce, 2 Duv. (Ky.) 576.   (3) The deceased, although working at the top of the shaft and handling the hoister for the defendant, was entitled to the protection of the statute, and the defendant owed the duty to him of providing a safe means of hoisting and lowering persons and material from its mine.   The object of the statute was not alone to protect persons who were being let into the mine or being hoisted from the mine, but it is broad enough in spirit to include every person who is employed in the operation of the mine, where his injury or death is occasioned by a failure to provide a safe means of hoisting and lowering persons and material into and out of the mine.   Durant v. Lexington Coal Mining Co., 97 Mo. 62.

*Percy Werner* for respondent; *Galen* and *A. E. Spencer* of counsel.

(1) The demurrer was properly sustained because the petition does not show the injury to have been occasioned by a failure to comply with any of the pro-

visions of section 8811; Revised Statutes 1899, under wihch it is asserted the action is brought. Spiva v. Co., 88 Mo. 68. (2) This statute only gives a right of action for "injury to persons or property occasioned by any violation of this article, or failure to comply with any of its provisions." One who claims damages thereunder must by his pleading bring himself within its terms. R. S. 1899, sec. 8820; Barker v. Railroad, 91 Mo. 86. (3) Deceased was not in a position to claim the benefit of the statute in question. Lumaghi v. Voytilla, 101 Ill. App. 112; Bell v. Railroad, 72 Mo. 50; Dohlstrom v. Railroad, 96 Mo. 99. (4) Plaintiff shows no right of action under the allegations in the petition, in the absence of an averment that her deceased son was a minor and unmarried. Dulaney v. Railroad, 21 Mo. App. 597; Sparks v. Railroad, 31 Mo. App. 111; McIntosh v. Railroad, 103 Mo. 131.

FOX, J.—On October 22, 1898, this suit was commenced in the circuit court of Jasper county, Missouri, by filing with the clerk of said court the following petition:

"Plaintiff for a cause of action against the defendant, states that on and before June 26, 1898, the defendant was a corporation, duly incorporated under the laws of the State of Missouri, as a business corporation, and was then and there engaged in mining for lead and zinc ores and other valuable substances on its mining land near the city of Joplin, in said county, and was engaged in digging and raising lead ore and zinc ore and waste from its mines and drift and lowering and hoisting persons employed by it and into and out of its said mine by means of a rope, pulley and derrick, by horsepower, known as a 'horse hoister' and that on the said 26th day of June, 1898, Ira D. Barron, son of plaintiff, was in the employ of the defendant, as its servant, as hoisterman, at said shaft, running its said hoister, receiving the said ore and waste at the mouth of the shaft, hoisting it to the surface of the earth by said hoister, and lowering the empty tubs to be refilled and hoisted and

lowering and hoisting persons in its employ into and
out of its said mine; that it became and was the duty of
defendant, in order to make the said derrick safe in
hoisting from said mine, to construct said derrick of
sound and strong timber; that the defendant negligently
failed to construct said derrick of sound timber, but the
said timber was unsound, by reason of age, and was not
heavy enough to make the same safe; and that the same
was full of nail holes, which weakened the said timber,
and was full of knots, which made the said timber unsafe
and insufficient to support the weight of the tubs, when
loaded, in case of a sudden jerk or fall of the tub any
distance; that it was the duty of the defendant, in order
to render the said hoister safe in rain, to have the said
derrick covered or roofed, so as to keep the rain from
coming on the brake, but the said defendant negligently
failed to put any roof or covering over said derrick, so
as to keep the rain from coming onto the brake of said
hoister; and that it was the duty of the defendant to
construct the brake so as to make the same reasonably
safe; but that the said brake was improperly con-
structed, and the defendant was negligent in the con-
struction of said brake, and the brake was improperly
placed, and the said defendant was negligent in the
placing of said brake in such a way that it could not
be handled, and could not be readily set, so as to stop
the sudden descent of the loaded tub; and that on the
26th day of June, 1898, while the said Ira D. Barron
was so in the employ of the defendant, as its servant,
as hoisterman at said hoister and mine, and engaged in
hoisting a loaded tub from said mine, on account of the
negligent construction of said derrick and hoister, and
the negligence of the defendant in failing to put a roof
over said derrick, it then and there being a rainy day,
said brake being wet therefrom, and on account of the
rotten and defective and insufficient timber of said der-
rick, and the nail holes and knots therein, and on account
of the defective construction of the said brake, the said
brake being defectively and negligently placed on said
derrick, gave way, and by force of the weight of the tub,

the timbers of said derrick were thrown down with great force, and struck the said Ira D. Barron, and knocked him into said shaft; and that he fell to the bottom of said shaft, a distance of one hundred and ten feet, and was instantly killed; that the said Ira D. Barron was a son of plaintiff, and that he was, at the time of his death, a single man, never having been married; and that he left no widow, lineal heirs or adopted children; and that the plaintiff, before and at the time of the loss of her said son, Ira D. Barron, was dependent for support upon the said Ira D. Barron. Wherefore, plaintiff states that by reason of the carelessness and negligence of the defendant, as aforesaid, and the death of her said son, occasioned by said carelessness and negligence of the defendant, as aforesaid, she is damaged in the sum of ten thousand dollars, and that a cause of action has accrued to her for that sum. Wherefore, plaintiff prays judgment against the defendant for the said sum of ten thousand dollars, together with costs.''

Summons having been served, returnable to the December term, 1898, of said court, the defendant, on December 5, 1898, appeared and filed its demurrer in said cause, in words and figures as follows, omitting caption:

''Now comes defendant and demurs to plaintiff's petition herein, for the reason that said petition does not state facts sufficient to constitute a cause of action against this defendant.''

And afterwards, on December 24, 1898, during said term, the said demurrer of defendant to the petition of plaintiff coming on to be heard, the same was by the court sustained, and the plaintiff, declining to further plead, but electing to stand on her petition, the court rendered judgment for defendant upon the demurrer, and from this judgment, plaintiff appeals.

It will be observed, that there is but one question presented in this cause, and that is, as to the correctness of the action of the trial court in sustaining the demurrer to the petition of plaintiff. This petition is evidently based, or intended to be predicated, upon the failure of

the defendant to comply with the requirements of section 8811, Revised Statutes 1899. Plaintiff brings this suit, in pursuance of the provisions of section 8820, Revised Statutes 1899, which provides in part that ''in case of loss of life by reason of such violation or failure as aforesaid, a right of action shall accrue to the widow of the person so killed, his lineal heirs or adopted children, *or to any person or persons who were, before such loss of life, dependent for support on the person or persons so killed, for a like recovery of damages sustained by reason of such loss of life or lives.*''

Section 8811, supra, provides that ''the owner, agent or operator of every mine operated by shaft shall provide suitable means of signaling between the bottom and the top thereof, and shall also provide safe means of hoisting and lowering persons in a cage covered with boiler iron, so as to keep safe, as far as possible, persons descending into and ascending out of said shaft; and such cage shall be furnished with guides to conduct it on slides through such shaft, with a sufficient brake on every drum to prevent accident in case of the giving out or breaking of machinery; and such cage shall be furnished with spring catches, intended and provided, as far as possible, to prevent the consequences of cable breaking or the loosening or disconnecting of the machinery; and no props or rails shall be lowered in a cage while men are descending into or ascending out of said mine.''

Plaintiff's petition can only be supported by allegations which bring it within the purview of that section. Her right to maintain the action is purely statutory and she ''must bring herself within the statutory requirements necessary to confer the right of action, and this must appear in the petition, otherwise it will show no cause of action.'' [Barker v. Railroad, 91 Mo. 86.] Unless it is substantially charged that the defendant has been guilty of negligence by reason of its failure to comply with the provisions of section 8811, supra, then the plaintiff can not maintain this action. Measured by this statute, from which the authority, if any, must flow

to maintain this suit, and the well settled principles of law applicable to it, did the petition of plaintiff state a cause of action?

A careful examination of the provisions of the statute unerringly points to the conclusion that it does not, and that the action of the trial court in sustaining the demurrer was proper and appropriate.

The acts of negligence complained of in the petition, are "negligent construction of derrick and hoister," "negligence in failing to put a roof over said derrick," "negligent construction of brake, the said brake being defectively and negligently placed on said derrick," "the rotten and defective and insufficient timber of said derrick, and the nail holes and knots therein."

Now, it will not be contended by this court that the acts herein set forth and alleged in the petition, do not constitute negligence, for it is just as imperative and as highly important for a mining company to furnish its employees with reasonably safe machinery, as any other branch of business; but that does not meet the difficulty in this case. It must be remembered the acts of negligence for which this particular plaintiff can maintain an action, must be in respect to some of the duties required by the statute upon which this action is predicated.

The statute that is charged or is intended to be charged as being violated, makes no mention whatever of the subjects of negligence alleged in the petition. It substantially requires "means for signaling," "cages to be covered with boiler iron," that "there must be placed guides in slides in the shaft with brakes on the drum," and that "there must be spring catches on such cage to prevent the consequences of cable breaking."

There is no question if the defendant company was guilty of the negligence complained of in the petition, that any person to whom the cause of action would survive, could maintain an action under the general damage act for common-law negligence. [Secs. 2864, 2865, 2866, R. S. 1899.]

Appellant earnestly invites our attention to the case of Durant v. Lexington Coal Mining Co., 97 Mo. 62. An examination of that case will demonstrate the distinction between it and the one before us. In that case, the party charged to have been injured was at work in the cage, at the bottom of the shaft, and the act of negligence charged was the failure to comply with one of the requirements of the statute, "the failure to cover the cage with iron;" hence, it is readily noticed that the two cases are not parallel. Considering this case from another standpoint, even though it was alleged that there was a failure to comply with the provisions of section 8811, we are of the impression that the deceased was not occupying a position in respect to such hoister, at the time of his injuries, as would make it available to the plaintiff in this action. No one can read the section referred to without reaching the conclusion, that the legislative mind was directed towards the protection of persons being lowered or hoisted in the cage used in the shaft. Respondent, in its brief, appropriately says: "The section of the statute in question provides for 'safe means for hoisting and lowering persons in a cage covered with boiler iron, so as to keep safe, as far as possible, persons descending into and ascending out of said shaft.'" The petition in this case alleges that deceased was engaged as "hoisterman;" he was at work on top of the ground; he was not in the cage or in the shaft at the time of the accident; nor was any one else using the cage in being lowered or hoisted from the shaft; nor did his ordinary duties require him to be in the cage or shaft. The position of the deceased was entirely different to that of Durant in the case of Durant v. Lexington Coal Mining Co., supra. The party injured was in the cage at the bottom of the shaft; and, by reason of the failure of the coal company to cover the cage with iron, as provided by the statute, the party was injured. The court, in announcing the doctrine in that case, does it upon the particular facts disclosed by the record, and in reaching a conclusion by construction broadened the statute sufficiently to include the case decided. In the Durant

case, Judge BLACK says that "our statute seems to be the same as that of Illinois;" therefore, a construction of the statute by the appellate courts of Illinois should be a very persuasive argument as to the correctness of the conclusions reached by this court upon this question. Since the decision of the Durant case, the appellate court of Illinois in the case of Lumaghi v. Voytilla, 101 Ill. App. 112, has construed the statute from which, doubtless, the provisions of our statute, so far as they could be made applicable, were borrowed. In that case, in discussing section 28 of the statute (Hurd, Ed. 1901, p. 1218), the court says: "When all the provisions of sections 28, to which we have referred, are considered, it seems to us that the plain intent of the Legislature, by the provisions therein contained, was to prescribe rules and regulations for the safety of the men while entering and leaving the mine, and this is so clearly pointed out by the first paragraph that it seems that argument to prove it becomes almost pedantry. From the opening paragraph to the closing one, every line and word, wherein affective action is required, relates to the hoisting and lowering of men or cages." It must be noted, as we refer to this Illinois case, that the plaintiff based his cause of action upon the failure of defendant to comply with the statute, which provided for a light at the bottom of the shaft, as long as there were men underground. The plaintiff's duties were underground but were not at the bottom of the shaft; but sixty or ninety feet away in an entry. The court adds in further discussing this case upon the facts as there indicated: "So that it is not perceived how or wherein any of these statutory provisions are applicable, or were intended to be applied to the appellee, in the situation he was placed at the time of his injury. He was not approaching the bottom to be hoisted, but was then engaged in his ordinary duties. He was not going to the bottom at all, but his ordinary duties required him to stop in the entry, from sixty to ninety feet away from the bottom. If, then, the purposes of the statute did not apply to the conditions in which appellee found himself, he had no

right to rely upon upon the absence of a sufficient light at the bottom of the shaft.'' Then the court announces the doctrine ''that persons for whose benefit a statute was intended can have no rights in consequence of the omission by others to comply with its provisions,'' citing a number of cases supporting the doctrine. So we say in this case, that it is apparent that section 8811, Revised Statutes 1899, was never intended to protect persons in the situation of the deceased. As before stated, the statute had in view the protection of those being lowered and hoisted in the shaft.

Entertaining the views as herein expressed, we are of the opinion that there is no error in the action of the trial court in sustaining the demurrer, and its judgment will be affirmed.

All concur.