EMMA CLARK and THOMAS RITTER, Appellants,
v. KANSAS CITY, ST. LOUIS & CHICAGO
RAILROAD COMPANY.

### Division One, April 13, 1909.

1. **LIMITATIONS: Torts: Special Statute: Exception.** Sec. 4285, R. S. 1899, providing that plaintiff "may commence a new action from time to time within one year after nonsuit suffered," does not apply to actions instituted for damages for torts under the Damage Act, because the Damage Act carries its own special statute of limitations, which must control.

2. ————: ————: **Nonsuit: After Amendment of 1905.** Where suit was brought by parents for the negligent killing of their son before the present section 2868 was enacted and they suffered nonsuit after the amendment of 1905 went into effect, their subsequent suit begun within one year thereafter is not barred by limitations.

3. ————: ————: ————: ————: **Retrospective Statute.** The amendment to the Damage Act made in 1905, providing that another action for the same tort may be instituted within one year after nonsuit suffered—a right plaintiffs did not have prior to the amendment unless the suit was renewed within one year after the cause of action accrued—is not a retrospective statute, and did not spend its force in suits to be instituted in the future. There is no vested right in a particular mode of procedure, and the retrospective laws forbidden by the Constitution are laws impairing existing vested civil rights.

4. ————: ————: ————: ————: **Prospective: Presumption.** A statute extending the time within which a suit may be renewed after nonsuit, is, in its essence, purely a remedial one, and in such case no presumption arises that it was intended to operate prospectively only.

5. ————: ————: ————: ————: **Shall Have Been Commenced: Meaning.** The words "shall have been commenced," used in the statute providing that "if any action shall have been commenced" within one year after the cause of action shall accrue and plaintiff suffer nonsuit, "such plaintiff may commence a new action within one year after such nonsuit suffered," do not refer wholly to the future, but include the past as well.

6. **TORTS: Death of Child: Suit by Divorced Wife.** Under the statute, which says that a suit for the wrongful death of a minor may be brought "by the father and mother," a mother, who has been divorced from her husband and awarded the exclusive care and custody of their minor child and retained such custody up to the time he was negligently killed by defendant, cannot alone maintain a suit for the wrongful death of the child, nor by joining the child's father as a plaintiff against his will. The statute gives the action to both parents if living, and if either refuses to sue the other cannot alone do so. The statute is so written and the courts have no power to change it or disregard it.

Appeal from Jackson Circuit Court.—*Hon. John G. Park*, Judge.

AFFIRMED.

*L. A. Laughlin* for appellants.

(1) The refusal of the father, Thomas Ritter, to join with the mother, cannot prevent the mother from suing. The father, Thomas Ritter, refused to join with the mother because he had executed a release to defendant for a small sum. That by so doing he could deprive the mother of the right to sue is rank injustice. Each would have an equal interest in the judgment and neither could release the claim of the other. To say that the mother still has a claim but cannot enforce it by suit owing to the refusal of the father to join with her violates the legal maxim, *ubi jus ibi remedium*. Buel v. Transfer Co., 45 Mo. 562; Crockett v. Transfer Co., 62 Mo. 457; Senn v. Railroad, 124 Mo. 621; Hennessy v. Brewing Co., 145 Mo. 104; Cytron v. Railroad, 205 Mo. 692. A release by one of several persons entitled to the proceeds arising from an action under such a statute is no bar to an action by the others, though it might affect his interest in the distribution of the proceeds. Tiffany, Death by Wrongful Act, sec. 125; Yelton v. Railroad, 134 Ind 414; Railroad v. Sullivan, 59 Ala. 272; Dowell v. Railroad, 62 Iowa 629;

Railroad v. Acuff, 92 Tenn. 26; Railroad v. Bradley, 45 Tex. 171; Railroad v. Tomlinson, 163 U. S. 369; Pierce v. Conners, 20 Colo. 178; Muldrow v. Railroad, 62 Mo. App. 431; Culver v. Smith, 82 Mo. App. 390; Cunningham v. Carpenter, 10 Ala. 109; Harris v. Swanson, 62 Ala. 299; Chambers v. Donaldson, 9 East 471; Wright v. McLemore, 10 Yerg. (Tenn.) 235; Gray v. Wilson, Meigs (Tenn.) 394; Whitehead v. Hughes, 2 Dowling, P. C. 258; Bolton v. Cuthbert, 132 Ala. 403. (2) The suit was not barred by the Statute of Limitations. In 1905 the Legislature amended Sec. 2868, R. S. 1899. This proviso took effect June 16, 1905. The nonsuit was suffered August 19, 1905. Respondent asserts the proviso did not apply to this action because it was pending when it went into effect. This statute makes a change in the practice of the court. Instead of suits being terminated by a dismissal, if the plaintiff renews them within a certain time, they shall be held not to be terminated. Black on Const. Law, p. 432; Cooley, Const. Lim. (7 Ed.), p. 381. There is no question that such a law would apply to causes of action already accrued. Stephens v. Bank, 43 Mo. 385; Watson v. Street & Ferry Co., 48 N. Y. 44, 93 N. Y. 522. The objection to retrospective statutes does not apply to remedial statutes which may be of a retrospective nature, provided they do not impair contracts or disturb absolute vested rights, and only go to confirm rights already existing, and in furtherance of the remedy. Fisher v. Hervey, 6 Colo. 16; Willard v. Harvey, 24 N. H. 344; Rairden v. Holden, 15 Ohio St. 207; De-Cordova v. Galveston, 4 Tex. 470; Phoenix Ins. Co. v. Shearman, 17 Tex. Civ. App. 456.

*Scarritt, Scarritt & Jones* for respondent.

(1) The amendment of 1905 does not apply to actions that had already been commenced before the Act of 1905 went into effect, but applied only to actions that "shall have been commenced," after the taking

effect of the Act of 1905.  Unless a statute is purely
remedial it is held to be unconstitutional to interpret
it other than prospective in its operation and effect. .
Even where the statute is purely remedial, the general
and quite universal rule of consideration is that the
statute will be construed to have prospective operation
and effect unless the language of the act itself makes it
clear and convincing that the Legislature intended that
its act should operate retrospectively.  The presump-
tion in law is that the Legislature intended that the act
in question was to operate prospectively only.  Leete
v. State Bank, 115 Mo. 195; Jones v. Bank (Colo.), 67
Pac. 178; Dewart v. Purdy, 29 Pa. 113.  (2)  The suit
cannot be maintained by Emma Clark alone.  Hen-
nessy v. Brewing Co., 145 Mo. 104; Bellamy v. Whitsell,
123 Mo. App. 610; Oates v. Railroad, 104 Mo. 518;
Barker v. Railroad, 91 Mo. 94; Barron v. Min. Co., 172
Mo. 228.  Counsel for plaintiff practically concedes the
correctness of our position, as stated above, and at-
tempts to evade it by making the father, Thomas Rit-
ter, a party plaintiff, although he refuses, as alleged
in the petition, to join in the suit as a plaintiff.  The
statute does not authorize such a procedure.  Ryan v.
Riddle, 78 Mo. 521; Parks v. Richardson, 35 Mo. App.
197; McLaran v. Wilhelm, 50 Mo. App. 661; Muldrow
v. Railroad, 62 Mo. App. 431.

LAMM, P. J.—Emma Clark had a son. Charles
Ritter (at his death an unmarried minor), by a for-
mer divorced husband, Thomas Ritter.  Joining her
former husband in the suit as a coplaintiff against his
consent, she sues for the statutory penalty of $5,000
for the wrongful death of Charles.  Defendant de-
murred.  Cast thereby, plaintiff refused to plead over,
and, judgment going against her, she appeals.

Sufficient of the record to determine questions
raised will appear in the following .

## STATEMENT OF THE CASE.

(*Nota bene*: Dates are material.) The petition was filed September 11, 1905. After alleging that plaintiffs had been married and that Charles Ritter was born to them as lawful issue, that on the 21st day of July, 1904, he was a minor without descendants and had never been married, that on that day he was negligently killed at a street crossing by defendant's servants operating a train (seven specific acts of negligence being set forth), the petition makes the following substantive allegations at which the demurrer is aimed:

"Plaintiff, Emma Clark, further states that on the —— day of August, 1887, at which time said minor was about five months old, she was duly divorced from the bonds of matrimony with said Thomas Ritter by a decree of the circuit court of Marion county, in the State of Illinois, and since that time she has married one Edward H. Clark.

"That the exclusive care and custody of said minor was given to her by said decree of said Marion Circuit Court and she retained the same up to the time of his death.

"That on the 20th day of September, 1904, plaintiff filed her petition in this court against the defendant for damages for causing the death of said Charles Ritter, in which suit said Thomas Ritter afterwards joined as a coplaintiff.

"That said suit was transferred to the circuit court of the United States for the Western District of Missouri on the 12th day of October, 1904, and plaintiffs suffered a nonsuit in said cause in said United States Court on the 19th day of August, 1905.

"That said Thomas Ritter has refused to join in this suit but his name is used herein to assert the rights of this plaintiff, Emma Clark, and said Emma Clark hereby offers to indemnify her coplaintiff against any

costs or expenses which may be incurred by him because of the use of his name as coplaintiff.''

The demurrer follows:

''Comes now the defendant and demurs to the plaintiff's petition for the following reasons, to-wit:

''1.  That there is an improper and unlawful joinder of parties plaintiff.

''2.  That the petition shows upon its face that Thomas Ritter refuses to be joined as a party plaintiff to this suit, and that the said Thomas Ritter cannot be joined and is not joined as a party plaintiff within the meaning of the statutes of Missouri under which this suit is instituted.

''3.  That the plaintiff, Emma Clark, alone under the statutes of Missouri, cannot maintain this suit.

''4.  That the petition does not state facts sufficient to constitute a cause of action against this defendant.

''5.  Because it appears upon the face of the petition that this suit was filed and instituted more than one year from the date of the death of the said Charles Ritter, and that the plaintiff was at the time of the institution of said suit and is now barred by the Statutes of Limitations from bringing any suit on account of the death of said Charles Ritter.''

It is conceded on all sides that the case must ride off on a construction of our statutes.  The statutes passing in review follow:

Section 2864, Revised Statutes 1899, of the Damage Act, in its third subdivision, touching the persons who may sue for a wrongful death, provides: ''If such deceased be a minor and unmarried, . . . . then by the father and mother, who may join in the suit, and each shall have an equal interest in the judgment; or if either of them be dead, then by the survivor.''

Section 2868, Revised Statutes 1899, of the Damage Act, reads: ''Every action instituted by virtue of

the preceding sections of this chapter [Chapter 17, devoted to damages for torts] shall be commenced within one year after the cause of such action shall accrue.''

On April 12, 1905 (Laws 1905, p. 138) the Legislature repealed section 2868, *supra,* and enacted a new one in lieu thereof, numbered 2868, reading: ''Every action instituted by virtue of the preceding sections of. this chapter shall be commenced within one year after the cause of such action shall accrue: Provided, that if any action shall have been commenced within the time prescribed in this section, and the plaintiff therein suffer a nonsuit, or, after a verdict for him, the judgment be arrested, or after a judgment for him, the same be reversed on appeal or error, such plaintiff may commence a new action, from time to time, within one year after such nonsuit suffered or such judgment arrested or reversed.''

Absent an emergency clause, the new section went into force under the provisions of our Constitution on June 16, 1905. [Laws of 1905, p. 330.]

I.  There has long existed in our statutes (Chapter 48 on Limitations of Actions, art. 2, Personal Actions), a section containing a saving clause in case of a nonsuit, and providing that a plaintiff ''may commence a new action from time to time, within one year after such nonsuit suffered.'' [Sec. 4285.] This saving clause was substantially borrowed and used in the new section, 2868, *supra,* now part of chapter 17 on Damages and Contributions in Actions of Tort. But in said article 2, chapter 48, it is further provided as follows (Sec. 4292): ''The provisions of this chapter shall not extend to any action which is or shall be otherwise limited by any statute; but such action shall be brought within the time limited by such statute.''

Proper construction of the last section precludes the idea that section 4285 applies to actions instituted

for damages for torts under the Damage Act. This, because the Damage Act carries its own special Statute of Limitations, which must control. [Gerren v. Railroad, 60 Mo. 405; Wilson v. Knox Co., 132 Mo. 387; Davenport v. Hannibal, 120 Mo. 150; Revelle v. Railroad, 74 Mo. 438; Packard v. Railroad, 181 Mo. 421.] In the latter case it was held that a widow, nonsuited within the year, might sue again provided she instituted her suit within a year after the cause of action accrued, not within a year after nonsuit suffered. [McQuade v. Railroad, 200 Mo. l. c. 157.]

It is practically conceded by counsel for appellant that unless section 2868, passed in 1905, applies to the case at bar, then the demurrer is well taken; for up to that time, as the law stood, there was no saving clause tolling the Statute of Limitations relating to damage suits grounded on torts, and permitting a nonsuit and the institution of a new suit within one year after the nonsuit. It is conceded, too, that the Act of 1905 was passed to remedy the construction put on the Damage Act by Gerren v. Railroad, *supra.*

II. A main proposition argued by counsel for respondent is that the Statute of Limitations (Sec. 2868, *supra,*) is a bar to the present suit because commenced more than one year after the cause of action accrued. *Contra.* appellant's counsel argues that the saving clause in section 2868 applies. To that, respondent's counsel replies that the statute was not intended to affect suits then pending but its force is spent on suits to be instituted in the future. If, now, the fact be recalled that the present suit was brought more than a year after the death of Charles Ritter, that the original suit was commenced before the present section 2868 was enacted and that the nonsuit was suffered on the 19th of August, 1905, and while the new section was in force, we have the whole contention outlined.

Attending to it, we have come to the conclusion that the Statute of Limitations is no bar. This, because:

(a) It cannot be held that the section in hand is violative of section 15, article 2, of the Constitution prohibiting the passing of laws retrospective in their operation. This, because the retrospective laws forbidden by that instrument are laws impairing existing vested civil rights. The law must take away such vested right, or it must create a new obligation, impose a new duty, or attach a new disability in respect to goneby transactions, in order to be retrospective and under the constitutional ban. [Gladney v. Sydnor, 172 Mo. 318; Hope Mutual Insurance Co. v. Flynn, 38 Mo. 483.]

There is no vested right in a particular mode of procedure. [Roenfeldt v. Railroad, 180 Mo. 554.]

Laws merely affecting civil remedies and modes of procedure are not within the constitutional interdiction. [Golden City v. Hall, 68 Mo. App. 627; In re Life Ass'n of America, 91 Mo. 177; Coe v. Ritter, 86 Mo. 277; Wellshear v. Kelley, 69 Mo. l. c. 354-5; Porter v. Mariner, 50 Mo. 364; Haarstick v. Gabriel, 200 Mo. l. c. 244, *et seq.*; O'Bryan v. Allen, 108 Mo. 227.]

(b) But it is argued by respondent's counsel that the grammatical construction of section 2868 precludes actions instituted before the passage of the law. They point out that a future form of the verb is used in the phrase, "shall have been commenced," and they contend that the amendment of 1905 applies only to actions that "shall have been commenced" after that act took effect. They contend, further, that all legislation must be construed as prospective even where it relates to the remedy, unless the contrary intention appears in the act itself. That there is a presumption running that way.

(1) Attending to the last proposition, we observe that the general rule is that legislation is construed to

be prospective; but it will be found in considering the
Missouri cases in which that rule is invoked (*e. g.,*
Leete v. Bank, 115 Mo. 184) that they do not relate to
mere procedure and to legislation merely affecting a
legal remedy.

In 2 Lewis' Sutherland Statutory Construction
(2 Ed.), section 674, the general doctrine is stated to
be that: "Where statutory relief is prescribed for a
cause which is continuous in its nature, as a statute of
limitations, or desertion for a certain time as ground
for divorce, if the cause continues after the statute
goes into effect, the future continuance of the cause
may be supplemented by the time it was continuous im-
mediately before the act was passed to constitute the
statutory period. No person can claim a vested right
in any particular mode of procedure for the enforce-
ment or defense of his rights. Where a new statute
deals with procedure only, *prima facie* it applies to all
actions—those which have accrued or are pending, and
future actions. What was before a subject of equitable
relief may be made triable by jury without affecting
vested rights. If before final decision a new law as to
procedure is enacted and goes into effect, it must from
that time govern and regulate the proceedings. But
the steps already taken, the status of the case as to
the court in which it was commenced, the pleadings put
in, and all things done under the late law, will stand,
unless an intention to the contrary is plainly mani-
fested; and pending cases are only affected by general
words as to future proceedings from the point reached
when the new law intervened. If what has been done
under the old law is bad or insufficient under that law
it remains so, though it would have been good if done
in the same way under the new law. A remedy may be
provided for existing rights, and new remedies added
to or substituted for those which exist. Every case
must to a considerable extent depend on its own cir-
cumstances. General words in remedial statutes may

be applied to past transactions and pending cases, according to all indications of legislative intent, and this may *be greatly influenced by considerations of convenience, reasonableness and justice."*

And Mr. Endlich (End. on Inter. Stat.) section 287, puts it this way: "In this country, the general rule seems to be, in accordance with the English, that statutes pertaining to the remedy, *i. e.,* such as relate to the course and form of proceedings for the enforcement of a right, but do not affect the substance of the judgment pronounced, and neither directly nor indirectly destroy all remedy whatever for the enforcement of the right, are retrospective, so as to apply to causes of action subsisting at the date of their passage." *(Ibid,* section 288): "Indeed, much of this kind of legislation is held to apply, not only to existing causes of action, but also to pending proceedings. It is said that an act dealing with procedure only applies unless the contrary intention is expressed, to all actions falling within its terms, whether commenced before or after the enactment."

The doctrine thus announced seems well-bedded in principle. We think it applies to the statute in hand, which, in its essence, is purely a remedial one, hence no presumption lies that it was intended to operate prospectively only. Being highly remedial it should be most liberally construed to further its life in advancing the remedy and striking down the mischief aimed at—the need and occasion of the law, the mischief felt and the object and remedy in view being cardinal elements in statutory interpretation. .

(2)    Courts have no right, by construction, to substitute their ideas of legislative intent for that unmistakably held by the Legislature and unmistakably expressed in legislative words. *Expressum facit cessare tacitum.* We must not interpret where there is no need of it. [McCluskey v. Cromwell, 11 N. Y. l. c. 601-2.]

Therefore, if the law says it is to operate only upon cases to be brought thereafter, if it in terms excludes pending cases, then we have nothing to do but to enforce it. Attending to that view, we do not read the statute as contended by counsel for the respondent. Its use of the future form of the verb, "commence," as developed in the phrase "shall have been commenced," in correct usage in the discourse of good writers and speakers, includes the past as well as the future. That phraseology in a statute has been held by the Supreme Court of Connecticut to be "susceptible of both past and future application; they [the words] furnish a convenient form for legislative use when it is desired to give all-inclusive force to a single expression. Therefore as they may mean future, or past and future, it becomes a question of legislative intent in each statute." [Norris v. Sullivan, 47 Conn. 474]. To the same effect is People *ex rel.* v. Board of Education, 110 N. Y. Supp. 769.

Counsel for appellant have cited us to third volume Wisconsin Statutes 1898, p. 2913, where the Legislature of that State has recognized the idea of past and future meaning in such future forms of the verb, and has enacted a rule of statutory construction to the effect that "the words 'shall have been' include past and future cases."

Our own statute on construction [R. S. 1899, section 4160] requires that "words and phrases shall be taken in their plain or ordinary and usual sense." With that rule in mind, let us illustrate: If a rule were bulletined on a given Tuesday by the head-master in charge of teaching grammar in a school, as follows: "No pupil shall be whipped twice for a mistake which *shall have been made* in parsing" would any boy in the school take the rule to apply only to *future* mistakes in parsing? Could he not well plead the rule (with high hope of its allowance) if his mistake and

one flogging occurred on the Monday prior and another flogging was threatened on the Wednesday subsequent to the rule for the same mistake?

Or if C, a plantation owner, is building barns and writes his overseer: "Paint all barns red that *shall have been commenced*," would B, his overseer, take that command to mean that only barns commenced *after* the order should be painted red?

Nay, if a very stickler for grammatical precision —a John Horne Tooke, a Lindlay Murray or a Dr. Marsh—should make a New Year's rule for his self-guidance, *viz.*: "If my reading of any book *shall have been commenced,* I will finish it," would he construe his own rule not to include Anatomy of Melancholy, or the Decline and Fall, put in reading on the prior Christmas? [See, Foley v. Dillon (Ky.), 105 S. W. 461; Douglas v. James, 66 Vt. 21.]

We may presume all legislators grammarians, but that presumption would not drive us to the conclusion that they meant only future action when they wrote "shall have been commenced."

(3) Moreover, section 2868 refers to "any action" which "shall have been commenced" within the time prescribed within "this section." The time prescribed in "this section" is the same time prescribed in the repealed section—*i. e.*, the old law is continued in force in that regard. It is quite difficult to see why, according to the English used, as got at by correct usage from the grammatical construction employed, pending actions were not included. When the nonsuit was suffered, the statute was in force. It, therefore, operated on that particular nonsuit, and we are of opinion that plaintiff was entitled to recommence her suit within one year after the nonsuit.

That is the reasonable and just view; accordingly, we so rule. The demurrer, therefore, cannot stand on such foot.

III.  It is charged in the petition that the mother of Charles was divorced; was awarded the custody of her child born of the marriage with Thomas; that she was bearing the burden of maintaining and educating him; that Thomas refused to join in bringing suit for his negligent death; and that the mother joined him as plaintiff, *willy nilly*.  Defendant demurs because of a misjoinder of parties plaintiff appearing on the face of the petition.  The next question is:  Was it well taken on that score?

Although our Damage Act had existed for a half century, with section 2864, *supra,* in the form quoted, yet this is the first time, so far as counsel's or our own research goes, that the precise point was here to be ruled.  It must, therefore, be determined by aid of general principles of law, by construing the statute equitably, that is, in the light of its true intendment, and by parity of reasoning.

It is argued by appellant's counsel that Thomas Ritter settled with defendant, hence his refusal to join. We are cited to cases elsewhere holding that one of two persons entitled to jointly share in a statutory penalty, or who are jointly interested in the proceeds of a judgment based on such statute, may not execute a release barring the other.  We doubt not that such doctrine is good law in this jurisdiction.  But, at the outset, it is well to keep the case within the channel marked out in the petition.  There is no allegation that Thomas settled with defendant or executed a release.  Therefore, that phase of appellant's brief must be taken as coloring matter, used *arguendo* by way of hypothesis.

A bitter hard case is put by learned counsel in his brief, *viz.*: may Thomas, undeserving, having a joint right of action with Emma and an equal share in the amount recovered, as a mere dog in the manger, through caprice, malice, pique, stubbornness, selfishness or other ignoble reason, refuse to join in the suit, and will the law permit Emma, the deserving mother,

to be wronged or tricked out of her rights to the compensation by such refusal?

But there is another side to the picture. Why not suppose that Thomas, through scruples of conscience or some motive resting in honor, refused to take part in the contemplated litigation? Is that not a thinkable hypothesis?

In determining the hard case put by counsel it is well to bear the adage in mind that hard cases make bad law—are the quicksands of the law. In our exposition of the statute it has been steadily held that, as there was no right of action for a wrongful death at common law at all, and, as the statute transmitting such right of action is in derogation of the common law, it must be construed with reasonable strictness. Furthermore, as the right of action is only of statutory origin, the Legislature had the right in creating it to prescribe a preclusive remedy, and nominate those entitled to sue and the terms on which they could sue and has done so. In Barker v. Railroad, 91 Mo. l. c. 94, it was said: "In statutory actions of this sort, *the party suing must bring himself strictly within the statutory requirements necessary to confer the right,* and this must appear in the petition; otherwise, it shows no cause of action." The doctrine so announced is bottomed on the reasoning in McNamara v. Slavens, 76 Mo. 329, and in Coover v. Moore, 31 Mo. 574—the latter case holding that: "There being thus no general right of recovery, open to all persons, representing the estate of the deceased, or interested in his life, *only such persons can recover* in such time, and in such manner, as is set forth in the statute."

In Oates v. Railroad, 104 Mo. l. c. 518, BLACK, J., quoted, with approval, section 413 of 3 Wood's Railway Law, reading: "It is needless to say that *actions under these statutes must be brought by the persons designated therein,* and within the time and in the manner therein provided. If the statute provides that the act-

ion shall be brought by the executor or administrator of the deceased, no other person can maintain an action," adding his own comment as follows: "The statute gives the cause of action and points out the persons who may sue, *and they, and they alone, can sue,* and they must sue within the time prescribed by the statute." [See, also, Barron v. Lead & Zinc Co., 172 Mo. 228, and Packard v. Railroad, 181 Mo. 421.]

In Hennessy v. Bavarian Brewing Co., 145 Mo. l. c. 113, MARSHALL, J., speaking to the point with the concurrence of his learned brethren, said: "Our statute, on which the right alone rests and by which it has been transmitted from the child [*i. e.,* the child killed], vests it expressly in the father *and* mother, *eo nomine* (who must join in the suit and each have an equal interest in the judgment), or if either of them be dead, then to the survivor. . . . . The fact that the statute is intended to transmit the rights of the deceased child to the father and mother, and that the relation between them as husband and wife does not affect their rights as parents, and the dissolution of the marital relations between them does not dispense with the necessity for joining both in litigation, and that neither can maintain the action alone, and that the remarriage of the wife after the dissolution of her former marital relations makes no difference as to her rights as the mother of deceased. is aptly illustrated by the history of the case of Buel v. St. Louis Transfer Co., 45 Mo. 562, and Crockett v. St. Louis Transfer Co., 52 Mo. 457."

What was said in the Hennessy case was somewhat by way of argument and illustration; therefore, is somewhat *obiter,* but it is *obiter* of a high order, based on the reasoning of the cases cited, and must be taken as sound exposition when read with other cases and the statute in review; for instance, Senn v. Railroad, 124 Mo. 621.

Undoubtedly it must be allowed to appellant that we have held that one of two living parents may save the Statute of Limitations from running by instituting a suit for the death of their child within one year, joining the other parent after the year has run. [Cytron v. Railroad, 205 Mo. 692.] But that holding was leveled at the limitation phrase of the statute and made a liberal application of our statutes relating to amendments—that and no more. What we said in those cases falls much short, in principle, of holding that one living parent could prosecute such a suit to a judgment or could join the other as coplaintiff against his will.

The Legislature enacting section 2864 of the Old Damage Act knew that divorces might ensue and that parties entitled to the penalty might refuse to join, and yet, in creating a new right of action in parents, it put the right to recover in *both* (if living) and shut its eyes to complications arising by divorce or refusal to join. The many Legislatures coming after that one knew that this court uniformly construed that statute with some strictness as in derogation of the common law, and that, strictly construed, it made no provision for a divorce and none for parents who would not join to recover the death penalty. It would be idle to speculate upon the ground for such legislative omission and silence. For aught that we know both omission and silence may have been grounded on an allowable legislative reason.

As the clear law reads, this defendant must pay in a specified case, to-wit, when a father *and* mother join in the suit prior to judgment and in a specified sum—no more, no less. Shall we write into it by construction an added provision, to-wit, that the wrongdoer is not only liable in cases put by the statute itself, but is also liable in any case where one of two parents or one of a family of minors, or (under a late statute) one of two administrators or executors, is alone willing to sue for the penalty? Is it the statutory scheme that the wrong-

doer should pay to *one* what the statute ordains should go to *both* parents, or all the minors? Or must he pay in full what all are not willing to receive? Or if he is to pay only part, what part shall it be? The statutory penalty is indivisible and all of it, or none, must be sued for. [Casey v. Railroad, 205 Mo. 721.]

We cannot well write the law as requested by learned counsel without thereby doing away with the rule of reasonable strict construction and without writing into the statute provisions not now there.

When at common law the assignee of a chose in action could not sue in his own name, common law courts invented a device to get round that injustice by permitting the assignee to sue in the name of the original party and, when necessary, indemnify such party against costs. So at common law "if one of the several owners of a joint interest refused to join as plaintiff, the common-law procedure, reverting to the device of 'nominal and use plaintiffs,' permitted the other owners to use his name as a coplaintiff." [30 Cyc. 107.] In our own statute, there is a section regulating procedure where an interest is transferred in any action pending and borrowing that idea in a modified form. [R. S. 1899, sec. 764.] But our statutory scheme is to require suits to be brought in the name of the real party in interest. If one necessary party will not join as plaintiff, he may, under given conditions, be made a party defendant. [R. S. 1899, sec. 544.]

We think learned counsel has mistaken the source of the power to correct evils, if any, in the statute. He should go to the Legislature and request that body to enlarge the remedy and make it flexible and broad enough to include cases within the hardships put by him in the case at bar, and see what the lawmaker says; for it seems sensible that the lawmaker should first write the law, and not we. To us the maxim applies: *Jus dicere et non jus dare.*

The judgment is affirmed. All concur.