STATE of Missouri, Respondent,

v.

Danny Glenn THOMAS, Appellant.

No. 11069.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 25, 1980.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 19, 1980.

Application to Transfer Denied
April 8, 1980.

John D. Ashcroft, Atty. Gen., Brenda Farr Engel, Richard F. Engel, Asst. Attys. Gen., Jefferson City, for respondent.

David Robards, Public Defender, Joplin, for appellant.

TITUS, Presiding Judge.

Defendant was charged with the May 16, 1977, "capital" murder of Phillip J. Frazier in Cedar County. Following a change of venue, a Jasper County jury on May 16, 1978, found him guilty and assessed punishment at life imprisonment without eligibility for probation or parole until he had served a minimum of fifty years of his sentence.[1]

Near midnight of May 15, 1977, four armed young men, i. e., Richard Johnson, Walter "Wickie" Olinghouse, Dewaine Thomas and his brother Danny Thomas (the defendant) went to the Frazier residence intent on robbery. After forcing their way into the house, the quartet bound, gagged and blindfolded Mr. and Mrs. Frazier with adhesive tape whereupon they proceeded to beat their victims and ransack the house for money and other valuables. This conduct continued for over an hour until Wickie's name was inadvertently mentioned. This prompted a decision to kill Mr. Frazier. The four robbers, involuntarily accompanied by Frazier, carried their loot to the car in which they had come and to the Frazier automobile, and drove the two vehicles to beneath a bridge. Frazier, still bound and still alive, was removed from one of the cars and placed on the ground. Dewaine Thomas poured gasoline on Frazier and shot him twice with a shotgun. These blasts were nonfatal. Richard Johnson then shot into the ground near Frazier's body with a .32 cal. weapon. He was followed by Wickie who shot Frazier once in the head with a .38 cal. Smith & Wesson revolver. Next defendant fired three shots from a .38 cal. Burgo pistol. Two of the shots entered Frazier's body, one into the shoulder, which destroyed the spinal cord, and one into the rib cage, which hit the heart. Finally, someone ignited the gasoline-soaked Frazier and the four fled the scene.

---

1. *State v. Duren,* 547 S.W.2d 476 (Mo. banc March 15, 1977) declared unconstitutional the death penalty for capital murder as provided in § 559.009 subd. 3, RSMo Cum.Supp. 1975, Annot., but upheld the alternative penalty provided by § 559.011 RSMo Cum.Supp. 1975, Annot., which was assessed in this case.

On this appeal, defendant's first three points relied on read: "1. The trial court erred in giving Instruction No. 5, the verdict-directing instruction on 'Capital' murder, as there was no Missouri Statute in force on the date of the offense designating 'Capital Murder' to be an offense. . . . 2. The trial court committed reversible error by not submitted [sic] punishment in the verdict-directing instructions as the killing occurred prior to May 26, 1977. . . . 3. The trial court erred in sentencing the defendant to life imprisonment without possibility for parole for fifty years because the statute which authorized such a sentence is unconstitutional in that such a sentence constitutes cruel and unusual punishment and its imposition violated due process."

■ These points relied on, as written, violate the mandate of Rule 84.04(d), V.A.M.R. They do not purport to state "wherein and why" there was no statute designating "capital murder" to be an offense, or "wherein and why" the court erred in not submitting punishment in the verdict directing instructions because the killing occurred before May 26, 1977, or "wherein and why" the imposed sentence constituted cruel and unusual punishment and violated due process. *State v. Williams*, 554 S.W.2d 524, 536[15] (Mo.App.1977); *State v. Johnson*, 537 S.W.2d 816, 819[10] (Mo.App.1976). To be reviewable on appeal, points relied on should definitely isolate and formulate the exact issues to be reviewed without resorting to the transcript or the argument portions of the brief [*State v. Hulsey*, 557 S.W.2d 715, 717[1] (Mo.App.1977)], for an appellate court is not obliged to seek through other portions of the brief to come by "wherein and why" it is contended that errors were committed. *State v. Perry*, 565 S.W.2d 841, 843[1] (Mo.App.1978).

■ Albeit the above quoted points relied on preserve nothing for appellate review, we briefly note as to the first point that while the Supreme Court in *State v. Duren*, supra n. 1, declared the death penalty unconstitutional as provided in § 559.009–3, it further said, 547 S.W.2d at 481[6]: ". . . . the use of the term 'capital' murder in both the title and body of § 559.005 (and in the other sections) is a misnomer and perhaps grammatically now incorrect. However, there is no law of which we are aware preventing such a designation for the crime therein defined." The second two points, supra, are nearly identical to Point I and Point III raised and rejected in *State v. Hanson*, 587 S.W.2d 895, 900–902[1, 2, 4 and 5] (Mo.App.1979). They need not be discussed here as *Hanson* answers them completely.

■ Defendant's point relied on number 4 states: "The trial court erred in overruling defendant's motion for judgment of acquittal and in submitting the case to the jury as the state's evidence was insufficient as a matter of law to sustain a judgment of conviction of 'capital' murder." As written, there are two things wrong with this point. First: In disregard of the requirements of Rule 84.04(d), V.A.M.R., it does not attempt to explain "wherein and why" the evidence was insufficient to sustain a conviction for capital murder. *State v. Gardner*, 534 S.W.2d 284, 289–290[6] (Mo.App.1976). Second: Defendant's motion for judgment of acquittal reads: "Comes now the defendant in the above captioned case, and pursuant to Rule 26.10, moves for a verdict of acquittal on the grounds that, as a matter of law, the evidence is not sufficient to sustain a judgment of conviction." The trial court instructed the jury regarding the crimes of capital murder, murder in the first and second degrees and manslaughter as provided by § 559.009, subd. 1, RSMo Cum.Supp. 1975, Annot. Neither in Point 4, nor elsewhere in his brief, does defendant contend the evidence was insufficient to sustain a conviction for first or second degree murder or manslaughter. However, his motion for judgment of acquittal was for total absolution of all crimes rather than for remission of the charge of capital murder. When viewed in the all-inclusive language cast in the motion for judgment of acquittal, the trial court cannot be shorted for denying the motion when even the defendant does not now champion the improbability of defendant's guilt for crimes

instructed on other than capital murder. Nonetheless, as defendant is contending the evidence was not sufficient to sustain the conviction of capital murder, we are confronted with an area, should defendant be correct, which constitutes plain error affecting substantial rights within the meaning of Rule 27.20(c), V.A.M.R. *State v. Williams*, 416 S.W.2d 71, 74[6] (Mo.1967). Therefore, we, ex gratia, consult the argument portion of defendant's brief to come by the intendment of the point.

The statute (§ 559.005 RSMo Cum. Supp. 1975, Annot.) defines capital murder thusly: "A person is guilty of capital murder if he unlawfully, willfully, knowingly, deliberately, and with premeditation kills or causes the killing of a human being." In considering the elements of this crime, it is well to remember that the state need not prove them beyond a shadow of a doubt or beyond any doubt. The state need only prove each element beyond a reasonable doubt. *State v. Henderson*, 547 S.W.2d 141, 143 (Mo.App.1976).

As employed in criminal statutes, the words "unlawfully" and "willfully" mean "knowingly" and "intentionally" or a thing not done accidently or unconsciously. *State v. Adams*, 532 S.W.2d 524, 527[2] (Mo. App.1976); *State v. Stavricos*, 506 S.W.2d 51, 56[5] (Mo.App.1974). "Deliberately" is defined as "in a deliberate manner: with deliberation" (Webster's Third New International Dictionary of the English Language—Unabridged—p. 596) or "in a cool state of the blood." *State v. Marston*, 479 S.W.2d 481, 484 (Mo.1972); *State v. Eaton*, 154 S.W.2d 767, 769 (Mo.1941). " 'Premeditation means thought of beforehand for any length of time, however short.' . . . This simply means that the defendant thought about what he was about to do before he did it." *State v. Marston, supra*, 479 S.W.2d at 484[6]. Although the use of the words "unlawfully", "willfully" and "knowingly" in § 559.005, supra, may smack of redundancy, we are unaware of a statute censored for stating more than enough.

In the argument portion of his brief regarding the fourth point relied on, defendant asseverates the evidence was not suffi-cient to sustain a conviction of capital murder because there was no showing beyond a reasonable doubt that he intended to take Frazier's life, that he knew he was certain to cause Frazier's death by shooting him and that he coolly and fully reflected upon taking Frazier's life. Defendant also contends the state did not sufficiently prove that Frazier was alive when defendant fired three shots from the .38 cal. Burgo pistol.

As to defendant's last contention, it is to be noted that the pathologist who examined the victim's body testified the two shotgun blasts were not fatal, but that any of the three .38 cal. bullets (one fired by Wickie and two fired by defendant) could have killed Frazier and it was most probable the victim was alive when all the shots were fired. But be that as it may, defendant was as responsible as if he had inflicted all of the bullets which killed Frazier. "All persons who act together with a common intent and purpose in the commission of a crime are equally guilty, if they share consciously in the criminal act as something they intend to bring about." *State v. Goodman*, 482 S.W.2d 490, 492[2] (Mo.1972). Since defendant was shown to have acted with others in the common purpose of killing Frazier, whether he personally fired the fatal shot or shots is of no consequence. *State v. Collins*, 520 S.W.2d 155, 157[3] (Mo.App.1975).

As to defendant's other assertions in his point 4 argument, the evidence disclosed that defendant, by use of a deadly weapon, fired two .38 cal. bullets into Frazier's vital parts, either of which was enough to kill. This was sufficient to permit the jury to find that defendant intended the killing. *State v. Ward*, 569 S.W.2d 341, 344[6] (Mo.App.1978). We cannot fathom defendant's claim there was no showing that he, by shooting at Frazier at close range three times, knew he was certain to cause Frazier's death. Defendant intentionally shot at Frazier and he is presumed to have intended death in so doing and also presumed to have intended the natural and probable consequences, i. e. death, of his own intentional act. *State v. Booker*, 503 S.W.2d 76, 78–79 (Mo.App.1973). Concern-

ing the defendant's asseveration there was no evidence showing that defendant coolly and fully reflected upon taking Frazier's life, we have this to say: After it was determined that Frazier was tò be killed, the armed and murder-bent entourage, including defendant, departed the Frazier home with the intended victim helplessly bound. It must have taken some time for the caravan to reach the place of execution, to remove the hapless Frazier from the vehicle which transported him and to douse him with gasoline in preparation for his funeral pyre. Thereafter, those assembled approached the victim singly and, in turn, fired their weapons. Defendant was last and, therefore, had more time than the others to contemplate what he was going to do before he did it. Under such circumstances, an urging that defendant did not coolly and fully reflect upon taking Frazier's life appears ludicrous.

Defendant's fifth point relied on reads: "The trial court erred in overruling the defendant's motion to suppress the tape recorded statement as such statement was elicited in violation of defendant's constitutional rights in that it was procured as a result of illegal mental coercion [sic]." This point, as the others, fails to comply with Rule 84.04(d) for it nowhere undertakes to demonstrate "wherein and why" the statement was obtained in violation of defendant's constitutional rights or by way of illegal mental coercion. While the point is not preserved for appellate review, we note there was a preponderance of the evidence presented upon the motion by the state to refute defendant's contentions. *State v. Olds*, 569 S.W.2d 745, 752[4] (Mo. banc 1978). The trial court properly ruled in admitting the statement.

Defendant's sixth and final point declares that "[t]he trial court erred in overruling the defendant's motion to suppress physical evidence and in admitting said evidence at trial as such evidence was obtained as a result of an illegal and unlawful search and seizure." We have no duty to consider this contention because the point does not advise us of the nature of the physical evidence involved or "wherein and why" it was obtained as a result of a search and seizure which was unlawful and illegal. Nevertheless, we gratuitously conclude that defendant cannot challenge the search and seizure as he has no standing to raise the issue. The evidence disclosed that after the robbery-murder of Frazier, defendant and Wickie learned that the Floyd Weaver residence in Gerster, Missouri, was unoccupied because Mr. Weaver had gone to Kansas City for some purpose. Neither defendant nor his companion had the owner's or possessor's permission to use the Weaver premises for his own purpose. They had no key and gained entry thereto via an unlocked window for the sole purpose of employing the house to hide from the authorities. No one save Weaver possessed ownership or any interest whatever in the property. When defendant et al. were finally flushed from the house by the authorities and it was subsequently searched and some of the robbery loot was seized, defendant had no standing to challenge the search or seizure. *State v. Hill*, 539 S.W.2d 521, 524–525[3–5] (Mo.App.1976).

Judgment affirmed.

FLANIGAN, C. J., and GREENE and PREWITT, JJ., concur.