STATE of Missouri, Respondent,

v.

Michael A. WHITE, Appellant.

No. 62324.

Supreme Court of Missouri,
En Banc.

Oct. 13, 1981.
Rehearing Denied Nov. 10, 1981.

Leslie Edwards, Asst. Public Defender, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Jay D. Haden, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Judge.

Michael A. White was convicted by a jury of capital murder, § 565.001, RSMo 1978; his punishment was fixed at imprisonment for life without eligibility for parole or probation for fifty years, § 565.008, RSMo 1978. Judgment was rendered accordingly. He charges error to the aider liability instructions; the refusal to grant his motion to suppress an incriminating statement; and the application of the statute on peremptory juror challenges. Affirmed.

I.

The evidence supports defendant's conviction for the murder of Susie Hawkins. It established that on February 5, 1979, between 8:30 and 9:00 p. m., Hardy Bivens arrived at Michael White's house. As previously arranged, Bivens was to give White a ride to the home of his brother, Charles White. Before leaving Michael's home, Bivens telephoned Janice Thompson. Bivens and Ms. Thompson had had a disagreement the previous day during which he threatened her. During the telephone conversation Ms. Thompson told Bivens that she was going to the supermarket, and would call Bivens when she returned home. Shortly after this conversation, Ms. Thompson and her step-sister Susie Hawkins, both fifteen-year-old girls, walked to the store. At approximately the same time Bivens and defendant also departed supposedly for the home of defendant's brother. Instead, Bivens drove directly to the store where Ms. Thompson said she was going. Sometime prior to arriving at the store defendant placed a loaded pistol on the front seat of the car between himself and Bivens; he carried extra bullets in his pocket. Bivens met the girls in the store and offered them a ride home; they accepted.

As Bivens drove from the store, he began to question Ms. Thompson regarding their argument of the previous day. An argument ensued between Bivens and Ms. Thompson. A short time later Bivens stopped the car; defendant and Bivens got out, spoke briefly, then re-entered, with defendant driving. The argument continued until Bivens picked up the gun and shot both girls, wounding Ms. Hawkins in the mouth and Ms. Thompson in the jaw. Following Bivens instructions, defendant drove to 23rd and Cass in the City of St. Louis, where an apartment building stood vacant.

Upon arriving, Bivens got out and ordered the girls out of the car. Bivens instructed defendant to drive around the block. While defendant was circling the block, Bivens forced the girls into the building, then ordered them to sit on the floor. The girls pleaded with Bivens, promising to remain silent about the incident. Bivens

denied their pleas, but fired no shots until he heard the defendant sound the horn after completing his trip around the block. After emptying his gun, Bivens ran back to the car where he demanded and received more bullets from defendant. Bivens ran back to the building as defendant drove around the block again. When Bivens entered the building he found only Ms. Hawkins; Ms. Thompson had fled. As she escaped, she heard more shots coming from the building. Bivens returned to the car and told defendant that Ms. Thompson had fled. Defendant disposed of Ms. Hawkins groceries, and he and Bivens returned to look for Ms. Thompson. While searching, defendant saw Ms. Hawkins on the floor coughing. Upon hearing a siren, Bivens and defendant fled together. Ms. Hawkins died as a result of her wounds. Both defendant and Bivens were arrested late the same evening.

## II.

The jury was instructed on all degrees of homicide as required by MAI-CR2d 15.00 series. The capital murder issue was submitted to the jury by two general instructions on criminal responsibility, a verdict directing instruction and a converse instruction. Instruction No. 5 was in form MAI-CR2d 2.10 [1] (derived from § 562.036, RSMo 1978):

1. A person is guilty of an offense if it was committed by conduct for which he is criminally responsible, whether that conduct was his own or that of another person or both his own conduct and that of another.

2. A person is criminally responsible for the conduct of another in committing a particular offense when, either before or during the commission of an offense, with the purpose of promoting the commission of that offense he aids or agrees to aid or attempts to aid such other person in committing that offense.

1. MAI-CR2d 2.10 has since been withdrawn by order of this Court April 4, 1981.

3. The presence of a person at or near the scene of an offense at the time it was committed is alone not sufficient to make him responsible therefor, although his presence may be considered together with all of the evidence in determining his guilt or innocence.

Instruction No. 6 was in form MAI-CR2d 2.14 (derived from § 565.051, RSMo 1978):

In this case you will be instructed that you may find the defendant either not guilty of any offense or guilty of either capital murder or second degree murder or manslaughter. In that connection you are instructed that when two persons are criminally responsible for an offense which is divided into greater and lesser offenses, each such person is guilty of that offense, greater or lesser, which is compatible with that state of mind with which he acted in committing the offense and compatible with his own accountability for any aggravating or mitigating fact or circumstance.

Instruction No. 7 was in form MAI-CR2d 2.12 (derived from § 562.041, RSMo 1978) combined with MAI-CR2d 15.02:

If you find and believe from the evidence beyond a reasonable doubt.

First, that on the 5th day of February, 1979, Hardy Bivens with the aid or attempted aid of the defendant committed the crime of capital murder of Susie Hawkins, in that Hardy Bivens, with the aid or attempted aid of the defendant caused the death of Susie Hawkins by shooting her, and in that Hardy Bivens, with the aid or attempted aid of the defendant knew he was practically certain to cause the death of Susie Hawkins, and in that Hardy Bivens with the aid or attempted aid of the defendant considered taking the life of Susie Hawkins and reflected upon this matter coolly and fully before doing so, and

Second, that the defendant either before or during the commission of the

offense of capital murder with the purpose of promoting its commission aided Hardy Bivens in committing that offense,

then you will find the defendant guilty of capital murder.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing propositions, you must find the defendant not guilty of that offense.

Instruction No. 8 was in form MAI-CR2d 3.02:

If you do not find and believe from the evidence beyond a reasonable doubt that Hardy Bivens with the aid or attempted aid of the defendant did consider taking the life of Susie Hawkins and did reflect upon this matter coolly and fully before doing so, you must find the defendant not guilty of capital murder.

Instruction B, refused by the court, was offered by defendant for use in place of or in addition to instruction No. 8:

If you do not find and believe from the evidence beyond a reasonable doubt that the Defendant did consider taking the life of Susie Hawkins and did reflect upon this matter coolly and fully before doing so, you must find the Defendant not guilty of Capital Murder.

### A.

■ Appellant contends Instruction No. 7 was improperly constructed. He argues first that the "practically certain" clause in No. 7 was erroneously included because it applies only to cases where the defendant is charged with an offense committed by another person but other than the original offense contemplated by the defendant. (Ex. felony murder) MAI-CR2d 2.12, Note on Use 6.

This argument overlooks the inclusion of this clause in MAI-CR2d 15.02 on capital murder which in the present case was combined with MAI-CR2d 2.12. This clause was properly included in Instruction No. 7

because it is a component of the capital murder instruction.

### B.

A second argument of improper construction concerns the use of "will" instead of "may" in the last line of the first paragraph. Note on Use 3 of MAI-CR2d 2.12 provides, "The word 'may' must be used ... in any case where Section 562.051 is applicable." This Note on Use refers to MAI-CR2d 2.14 Note on Use 3 which indicates that MAI-CR2d 2.14 and by reference thereto the word "may" in MAI-CR2d 2.12 must be used "when two or more persons are criminally responsible for an offense divided into degrees," citing § 562.051, RSMo 1978.

■ Prejudicial effect of giving or failure to give an instruction in violation of MAI-CR2d and the applicable Notes on Use is for judicial determination. Rule 28.02(e); *State v. Williams*, 611 S.W.2d 26, 29 (Mo. banc 1981); *State v. Heitman*, 589 S.W.2d 249, 255 (Mo. banc 1979); *State v. Graves*, 588 S.W.2d 495, 497 (Mo. banc 1979). Such errors are presumptively prejudicial unless the contrary is clearly demonstrated. *State v. Williams, supra; State v. Graves, supra; State v. Clifton*, 549 S.W.2d 891, 893 (Mo. App. 1977). This Court must review all submitted instructions together to determine if the use of "will" in Instruction No. 7, resulted in prejudicial error. *State v. Vainikos*, 366 S.W.2d 423, 425 (Mo. banc 1963); *State v. Harris*, 602 S.W.2d 840, 847 (Mo.App.1980).

■ The use of "may" "when two or more persons are criminally responsible for an offense divided into degrees", (§ 562.051, RSMo 1978) serves to inform the jury that they are not required to find each defendant guilty in the same degree. Therefore, if the jury understood it could consider defendant's liability as to each degree, then the use of "will" instead of "may" has no prejudicial effect. In this case, the jury was instructed on all applicable degrees of

homicide and it did consider each degree of homicide. Instruction No. 6 was also submitted and informed the jury that the defendant is guilty to the degree compatible with his culpability. During its deliberation the jury panel sent a series of questions to the trial judge one of which asked: "What is the earliest time for parole for all three sentences, what is the minimum and maximum time for all three sentences?" Considered together and in these circumstances, the instructions conveyed to the jury its duty to consider the various degrees of culpability, and the use of "will" in Instruction No. 7 did not mislead the jury.

### C.

Appellant contends that Instructions No. 5 and 7 improperly stated the law by failing to require the jury to find that defendant had the intent of the underlying felony. Appellant's argument is based on § 562.-036 [2] and § 562.051 [3], RSMo 1978. He construes these two sections as requiring the aider to have the intent of the underlying offense in addition to the intent to purposely promote the commission of the offense, as required by § 562.041.1(2), RSMo 1978 [4]. Thus, appellant argues that under § 562.036 and § 562.051, RSMo 1978, the jury must find: (1) that the aider purposely promoted the commission of the murder, *and* (2) aided in the murder only after coolly and fully deliberating on the matter (the requisite intent for capital murder). In appellant's view an aider must have two intents, and the jury must be so instructed.

**2.** 562.036. *Accountability for conduct*
    A person with the required culpable mental state is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is criminally responsible, or both.

**3.** 562.051. *Conviction of different degrees of offenses*
    Except as otherwise provided, when two or more persons are criminally responsible for an offense which is divided into degrees, each person is guilty of such degree as is compatible with his own culpable mental state and with his own accountability for an aggravating or mitigating fact or circumstance.

The instructions challenged by the appellant employ the language of the applicable statutes. Accordingly, appellant's attack cannot be sustained on the grounds the instructions do not correctly state the law; to the contrary the instructions mimic the statutes. Thus, appellant's argument is directed at how the statute is construed, rather than the construction of the instructions.

The goal of statutory interpretation is to determine and give effect to the intent of the legislature. *State v. Kraus*, 530 S.W.2d 684, 685 (Mo. banc 1975). To this purpose, the court considers a particular statute together with related statutes which may shed light on its meaning, 530 S.W.2d at 686–87. The court must also consider the purpose or goal of the statute and any relevant conditions existing at the time it was enacted. *State v. Wright*, 515 S.W.2d 421, 427 (Mo. banc 1974).

Appellant's reading of this statutory scheme is too broad in the sense that he views it as requiring the jury to find two specific intents. If the Legislature had intended to require an aider to have a dual intent, it would have said so in the statutes. To the contrary, the only requirement expressed in the three sections is found in § 562.041.1(2), RSMo 1978. The comment which accompanies § 562.041, V.A.M.S., 1979 states that "the section requires a 'purpose to promote the commission of an offense.'" There is no mention of an additional or separate mental state in this comment or the comments to the other two sections.

**4.** 562.041.1(2). *Responsibility for the conduct of another*
    1. A person is criminally responsible for the conduct of another when
    *    *    *    *    *    *
    (2) Either before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.

■ Section 562.016(2), RSMo 1978 states "A person 'acts purposely', or with purpose, with respect to his conduct or to a result thereof when it is his conscious object to engage in that conduct or to cause that result." Therefore to be found guilty of a particular offense, an aider must aid another or others with the conscious object of causing that offense. A finding that the aider had this intent is equivalent to finding that the aider and active participant shared a common intent or purpose.

■ The pre-code corollary to § 562.041, RSMo 1978 was § 556.170, RSMo (Repealed) which abrogated the distinction between principals and accessories. *State v. West*, 484 S.W.2d 191, 195 (Mo. 1972); *State v. Spica*, 389 S.W.2d 35, 40 (Mo. 1965), *cert. denied*, 383 U.S. 972, 86 S.Ct. 1277, 16 L.Ed.2d 312 (1966). *State v. Butler*, 310 S.W.2d 952, 957 (Mo. 1958). It made no reference to the elements of aider liability. However, in *State v. Grebe*, 461 S.W.2d 265 (Mo. banc 1970), this Court held that the intent to aid or purposeful aiding is an essential element of aider liability. It is established in the pre-code common law of this state that those "who act together with a common intent and purpose in the commission of a crime are equally guilty, if they share consciously in the criminal act as something they intend to bring about." *State v. Goodman*, 482 S.W.2d 490, 492 (Mo. 1972); *State v. Garton*, 371 S.W.2d 283, 289 (Mo. 1963); *State v. Johnson*, 347 S.W.2d 220, 222 (Mo. 1961); *State v. Thomas*, 595 S.W.2d 325, 328 (Mo.App. 1980); *State v. Collins*, 520 S.W.2d 155, 157 (Mo.App. 1975). *Cf. State v. Lute*, 608 S.W.2d 381 (Mo. banc 1980). Where, as in the present consideration, the wording of a new statute follows the language of the pre-existing common law it must be presumed the legislature intended the same meaning. It is irrational to say that the same language has two separate meanings when used in the first instance by the courts and employed subsequently by the legislature. Section 562.041, RSMo 1978 codifies that which was previously established under common law. *Cf. State v. Mitchell*, 611 S.W.2d 223, 227 (Mo. banc 1981); *State v. Pierson*, 610 S.W.2d 86, 91 (Mo.App. 1980).

■ Appellant's argument emphasizes the words "with the required culpable mental state" found in § 562.036, RSMo 1978 and the provision in § 562.051, RSMo 1978 that "each person is guilty of such degree as is compatible with his own culpable mental state . . ." Section 562.036, RSMo 1978 provides that one may be liable for the conduct of another with the proviso that the defendant have his own culpable mental state. Comment to § 562.036, V.A.M.S. 1979. As shown above, the required mental state is the purpose to promote the commission of the offense. Section 562.051, RSMo 1978 expressly permits variance in the degree of culpability of one defendant relative to another. This express provision is necessary because "At common law there was a question whether an 'aider and abettor' could be guilty of a higher (or lower) degree of the offense assisted." Comment to § 562.051, V.A.M.S. 1979. When, as in the present case, the aider is found to have purposely aided in capital murder and thus has the same intent of the active participant, all other things being equal, they are liable to the same degree. Situations can exist where the liability of each is not the same. In such cases, § 562.051, RSMo 1978, permits the defendant or the state to present evidence aggravating or mitigating the matter. For example, defendant may introduce evidence showing that he did not have the purpose or conscious object of aiding in capital murder. Contrary to appellant's argument, § 562.051, RSMo 1978, does not create any elements of intent in addition to that of § 562.041, RSMo 1978. MAI-CR2d 2.14 informs the jury that it is to consider the defendant's guilt or innocence as to each degree of the offense independently from other defendants who might be liable for the same offense.

■ In this case, the jury was instructed and found defendant "with the purpose of

promoting its commission aided Hardy Bivens in committing that offense" [capital murder], which is to say, acting with the conscious object of causing premeditated murder, defendant aided in causing capital murder. Thus the jury necessarily found that defendant had the same intent as the active participant, Hardy Bivens. The jury was free to find the defendant did not purposely aid in premeditated murder because it was instructed as to lesser degrees of homicide and further so instructed by Instruction No. 6.

Instruction No. 8 was a proper converse in that it controverted one of the elements of the state's case and followed the form required by MAI-CR2d 3.02. As stated in the Notes on Use to MAI-CR2d 3.02 a converse need not cover all elements included in the verdict directing instruction.

The court's instructions were properly composed under the directives of MAI-CR2d and correctly stated the law of aider liability as contained in the applicable statutes.

### D.

■ Defendant's tendered Instruction B was properly refused because it is confusing and inaccurate. Instruction B is not couched in the language of aider liability in § 562.041, RSMo 1978 because it suggests

that defendant committed the act of capital murder himself. Although one who aids in capital murder is responsible as if he had performed the act himself, it is a misstatement of fact to say this defendant so acted. In the sense that this instruction would require the jury to find the defendant committed the act of capital murder himself, it misstates the law of this case. A converse must correctly declare the law before refusal to submit becomes error. *State v. McWilliams*, 331 S.W.2d 610, 613 (Mo. 1960).

### III.

Appellant challenges the admission of a tape recorded statement which he asserts was made in return for a promise that the would be released, and thus was involuntarily made. Appellant points to an incident [5] which he asserts constitutes an implied promise of leniency.[6]

■ The state bears the burden of proving, by a preponderance of the evidence, the voluntariness of a confession. *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30, L.Ed.2d 618 (1972); *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *State v. Hughes*, 596 S.W.2d 723, 726 (Mo. banc 1980); *State v. Olds*, 569 S.W.2d 745, 751 (Mo. banc 1978). The state must show that "defendant was effectively

5. The following dialogue took place:
Q. [By Sgt. McDonagh] Did we promise you anything?
A. No more than I was going to be let go.
Q. Well, like I said, it's going to the Grand Jury and they're going to release you upon their hearing The Grand Jury is going to hear this and they'll make a decision at that time.
A. But you told me that I was going to be released.
Q. Well, you are going to be released, you are going to be released in a few minutes as soon as we're done with this, but the whole case is going to be presented to the Grand Jury and they're going to make a determination. If they decide to indict you, you'll have to be rearrested. But if they don't decide to indict you, you'll probably be used as a witness, okay?
A. Okay.
Q. Sergeant Green, you got anything else?
SERGEANT GREEN: Just to clarify that

what he meant by 'releasing you' or 'letting you go,' like after this statement, we're going to leave you out of our custody but the case still will be held by the Grand Jury—heard by the Grand Jury, do you understand that?
A. Yes, sir.
Q. (By Sergeant Green) So, that's what he meant by 'we're going to let you go.' You clear on that now?
A. Yes, sir."

6. Appellant relies on *State v. Hoopes*, 534 S.W.2d 26 (Mo. banc 1976), stating that "[w]hen statements are obtained from an accused upon promises of leniency in return for a plea of guilty and the plea of guilty is aborted, the admissions obtained pursuant to agreement, in the words of Meyers and Abel, *supra*, should 'never have been heard of again.' " 534 S.W.2d at 37. That holding is not applicable to the facts of this case.

advised of his rights and then intelligently and understandingly declined to exercise them." *State v. Alewine,* 474 S.W.2d 848, 851 (Mo. 1971).

■ At the suppression hearing the state offered into evidence the tape recorded statement and the testimony of Sergeant McDonagh, one of the officers present when the statement was made. The tape recording begins with the giving of the warnings of rights as required by *Miranda v. Arizona, supra.* Defendant after expressing full understanding declined to exercise these rights.[7] The statement was an attempt by defendant to clear himself of culpability rather than to confess guilt. He was promised that he would be released pending a decision by the Grand Jury; he was released. There is no evidence that the release was contingent upon the making of a statement or which otherwise controverts the state's evidence showing the statement was voluntarily made. On cross-examination, Sergeant McDonagh indicated that some conversation had taken place prior to when the recording began, yet the evidence offered by the state is not controverted by whatever inference can be drawn therefrom. The question is "whether the evidence was sufficient to sustain the trial court's finding that the statement was voluntarily given," *State v. Alewine,* 474 S.W.2d at 852; sufficient evidence was presented to support the trial court's ruling.

## IV.

Appellant asserts that he was entitled to twelve peremptory challenges pursuant to § 546.180, RSMo (Repealed), which was in effect when the offense occurred. The trial court proceeded under the newly enacted § 546.180, RSMo Supp. 1980, effective at the time of trial which afforded defendant a lesser number of peremptory strikes. Appellant argues that the use of the new

provision in lieu of the former violated his right to a fair and impartial jury and to due process.

### A.

Missouri Constitution, art. I, § 22(a) provides "That the right of trial by jury as heretofore enjoyed shall remain inviolate; ...." Appellant suggests this provision is a sort of specialized prohibition against retroactive application of changes in jury selection procedure. He cites no authority in support of this interpretation and our research reveals none.

■ Although the Missouri Constitution generally prohibits ex post facto laws and retroactive application of enacted laws, Mo. Const., art. I, § 13, V.A.M.S., there is an exception for statutory changes which have no effect on any substantive right of the parties. A statute dealing only with procedure applies to all actions falling within its terms whether commenced before or after the enactment. *State ex rel. St. Louis-San Francisco Ry. Co. v. Buder,* 515 S.W.2d 409, 410 (Mo. banc 1974); *Darrah v. Foster,* 335 S.W.2d 24, 29 (Mo. 1962); *Clark v. Kansas City, St. Louis & Chicago Railroad Co.,* 219 Mo. 524, 527, 118 S.W. 40, 44 (1962). In *State v. Eaton,* 316 Mo. 995, 292 S.W. 70 (1927), the law concerning the number of challenges afforded a defendant was enacted after the offense occurred and was applied to the defendant's trial. This Court held: "The number of challenges to which a defendant on trial is entitled is purely a procedural matter and does not constitute a substantial right" *Id.,* 292 S.W. at 74.

### B.

■ Defendant's right to a jury trial as guaranteed by U.S. Const. amend. VI made applicable to the states by U.S. Const. amend. XIV was not violated by the application of § 546.180, RSMo Supp. 1980. Ap-

---

**7.** Appellant also signed a waiver form, according to the uncontradicted testimony of Sergeant McDonagh.

pellant concedes that the United States Supreme Court has held that certain procedural issues do not fall within constitutional requirements. *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972) (unanimous jury verdict not required by the Sixth Amendment) and *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970) (twelve person jury in robbery case not a necessary requirement in trial by jury). He asserts, however, that the number of peremptory challenges more accurately falls within the class of cases related to the composition of the jury, citing *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1974) (Sixth Amendment prohibits barring women from jury); *Alexander v. Louisiana*, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972) (racial discrimination in grand jury selection unconstitutional), *Carter v. Jury Commissioner*, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970) (discriminatory exclusion of a class from jury rolls unconstitutional).

The cases upon which appellant relies require a jury roll to include members of the entire spectrum of the community under the Sixth Amendment. As said in *Williams v. Florida, supra,*

> the essential feature of a jury obviously lies in the interposition between the accused and his accuser of the common sense judgment of a group of laymen and in community participation and shared responsibility that results from that group's determination of guilt or innocence. The performance of this role is not a function of the particular number of the body that makes up the jury.

*Id.* 399 U.S. at 100, 90 S.Ct. at 1905.

■ Although the use of peremptory challenges clearly affects the composition of the jury, it does so in a way which is distinct from assuring that the entire community is represented on the panel. These two selection processes are actually opposite to each other. The cases cited by appellant

prohibit race or sex discrimination in the compilation of jury rolls. Peremptory jury strikes, however, may be exercised on grounds "normally thought irrelevant to legal proceedings or official action, namely, the race, religion, nationality, occupation or affiliation of people summoned for jury duty." *Swain v. Alabama*, 380 U.S. 202, 220, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965). The selection of potential jurors in the first instances is a separate matter from their subsequent elimination at trial by peremptory challenge. The Sixth Amendment protection covering the former does not encompass the latter.

The judgment is affirmed.

DONNELLY, C. J., RENDLEN, WELLIVER and MORGAN, JJ., concur.

SEILER, J., dissents in separate dissenting opinion filed.

BARDGETT, J., dissents and concurs in separate dissenting opinion of SEILER, J.

SEILER, Judge, dissenting.

I respectfully dissent.

Michael White as an inactive participant was charged with and convicted of capital murder in the death of Susie Hawkins under § 565.001, RSMo 1978 which provides that "[a]ny person who unlawfully, willfully, knowingly, deliberately, and with premeditation kills or causes the killing of another human being is guilty of the offense of capital murder.[1] The principal opinion sets forth the evidence the state introduced to support a conviction of capital murder. There was, however, conflicting evidence from which the jury, if properly instructed, could have found the defendant not guilty or guilty of a lesser offense. The defendant, who had no prior convictions, testified that he did not know that Hardy Bivens intended to shoot the girls; he testified that he carried the gun because of trouble in school; he testified that he placed the gun

---

**1.** All statutory references are to RSMo 1978 unless indicated otherwise.

on the seat of the car because he did not want to be arrested for carrying a concealed weapon; he testified that he obeyed Hardy Bivens in driving around the block and giving him bullets because of fear, that Bivens threatened him with the weapon several times. Furthermore, Janice Thompson testified that Hardy Bivens, not Michael White, was the person who threatened and ultimately shot her and killed Susie Hawkins, her step-sister. The defendant did not know Susie Hawkins and knew Janice Thompson only through Hardy Bivens and school. There was no evidence of any motive for Michael White to kill the girls, other than that White and Bivens were friends.[2]

The defendant argues on appeal that the jury was improperly instructed in three respects. First, the non-MAI-CR verdict directors misstated the applicable Missouri law on capital murder and accessorial liability. Second, the use of "will" rather than "may" in the second paragraph of instructions no. 7, no. 9, and no. 11, the verdict directors, was error (a fact conceded by the state) and was prejudicial. Third, the trial court erred in refusing to give instruction no. B, a converse instruction in which the defendant's mental state as to the underlying crime was emphasized.

Had Hardy Bivens been the defendant in this case, the jury to find him guilty of capital murder, the most deliberate of all homicides, would have had to find and believe beyond a reasonable doubt four elements taken from MAI-CR2d 15.02 and set out below:

> If you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on February 5, 1979, in the City of St. Louis, State of Missouri, the defendant caused the death of Susie Hawkins by shooting her, and
>
> Second, that the defendant intended to take the life of Susie Hawkins, and

> Third, that the defendant knew that he was practically certain to cause the death of Susie Hawkins, and
>
> Fourth, that the defendant considered taking the life of Susie Hawkins and reflected upon this matter coolly and fully before doing so

then you will find the defendant guilty of capital murder.

The facts of the instant case are different, however. Michael White did not kill Susie Hawkins; Hardy Bivens killed Susie Hawkins. By definition, capital murder is committed by one who "unlawfully, willfully, knowingly, deliberately, and with premeditation kills" another. Section 565.001. Beyond question it requires a culpable mental state, an evil intent. This necessarily must be true of one who aids in a capital murder as well as of the one who actually does the killing. It is unthinkable that it would require less in the way of a culpable mental state to be convicted as an aider in capital murder, where the death penalty is possible, than it does to be convicted as the principal. Defendant was charged with and convicted of capital murder on the basis of the *conduct* of Hardy Bivens, *i.e.*, the act of killing, under the authority of § 562.036 which provides that "[a] person *with the required culpable mental state* is guilty of an offense if it is committed by ... the conduct of another person *for which he is criminally responsible* ...." (Emphasis added.)

The next section of the code, § 562.041, tells when a person is considered "criminally responsible for the conduct of another." Section 562.041.1(2) states that "[a] person is criminally responsible for the conduct of another when ... [e]ither before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids ... such other person in planning, committing or attempting to commit the offense."

---

**2.** While motive is not an essential element of capital murder, lack of motive could bear on whether defendant would willfully and pur- posely involve himself in helping shoot the two girls.

Section 562.051 must also be considered, because it applies when an offense is divided into degrees, as is the case here. It provides that "each person is guilty of such degree as is compatible with his own culpable mental state . . . ."

The verdict director, instruction no. 7, set out below, must be examined to see if the jury to convict defendant of capital murder as an inactive participant had to find all the elements of capital murder with the exception of the actual killing. There are certain principles to be applied in this examination. First, the instruction before us is not to be found in MAI-CR2d and therefore, does not have a presumption of validity. It was prepared by the prosecution and given over the objection of the defendant. Second, Rule 28.02(d) requires that "the form not in MAI-CR . . . shall be simple, brief, impartial, and free from argument. . . . All instructions, where possible, shall follow the format of MAI-CR instructions, including the skeleton forms therein." Third, "[a]n instruction must require the jury to find every fact necessary to constitute the *essential elements* of the offense charged . . . . *State v. Singleton*, 602 S.W.2d 3, 8 (Mo.App. 1980) (emphasis added). Fourth, each submission must be supported by the evidence.

Stated, succinctly, "[T]he ultimate test for the correctness of an instruction is whether it follows the substantive law and whether it will be correctly understood by a jury composed of average lay people." *Arthur v. Royse*, 574 S.W.2d 22, 24 (Mo.App. 1978).

Instruction No. 7 was as follows:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on the 5th day of February, 1979, Hardy Bivens with the aid or attempted aid of the defendant committed the crime of capital murder of Susie Hawkins,

in that Hardy Bivens, with the aid or attempted aid of the defendant caused the death of Susie Hawkins by shooting her, and

in that Hardy Bivens, with the aid or attempted aid of the defendant intended to take the life of Susie Hawkins, and

in that Hardy Bivens, with the aid or attempted aid of the defendant knew he was practically certain to cause the death of Susie Hawkins, and

in that Hardy Bivens with the aid or attempted aid of the defendant considered taking the life of Susie Hawkins and reflected upon this matter coolly and fully before doing so, and

Second, that the defendant either before or during the commission of the offense of capital murder with the purpose of promoting its commission aided Hardy Bivens in committing that offense,

then you will find the defendant guilty of capital murder.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing propositions, you must find the defendant not guilty of that offense.

Paragraph First of No. 7, unlike a standard MAI-CR verdict director, first submits a conclusion; *i. e.*, that Hardy Bivens with the aid of the defendant committed capital murder. After stating the conclusion, the instruction continues by the use of a series of "in thats" in an attempt to set forth the required elements of capital murder in an aider case. Then, if we put ourselves in the place of the jury and try to understand what the instruction is trying to say, we find ourselves in a "never-never land" of language. After calling for a finding that Bivens, with the aid of defendant, caused the death of Susie Hawkins by shooting her, the instruction continues "in that Hardy Bivens, with the aid or attempted aid of the defendant intended to take the life of Susie Hawkins". Does this mean that defendant somehow aided Bivens in Bivens forming an intent to kill the victim? If so, where is the supporting evidence? Or does it mean that Bivens intended to take the victim's life

with defendant's help? If it means this, where is there any requirement that the jury find what the defendant's intent was? What Bivens may have intended is not binding on defendant.

The instruction then continues "in that Hardy Bivens, with the aid or attempted aid of the defendant knew he was practically certain to cause the death of Susie Hawkins." What does this mean? Does it mean that the defendant aided Hardy Bivens in Bivens' knowing? Does it mean that defendant was doing Hardy Bivens' thinking for him? Does it mean that somehow by reason of the defendant's aid, Hardy Bivens knew he was practically certain to cause the death? None of these is an element of the crime for capital murder, nor is there any evidence to support them. Or does it mean that Bivens knew he was practically certain to cause the death of Susie Hawkins with the aid of the defendant? If so, where is there any finding that defendant had a wrongful intent? As pointed out earlier, there was evidence that Bivens did obtain aid from defendant but it was due to defendant's fear of Bivens. If the jury believed this, but interpreted the instruction to mean that Bivens knew that with the aid of defendant Bivens was practically certain to cause the death of Susie Hawkins, the jury could believe that it was required to convict defendant even though his aid was given through fear and with no wrongful intent.

The above is followed by another "in that", reading "in that Hardy Bivens with

the aid or attempted aid of the defendant considered taking the life of Susie Hawkins and reflected upon this matter coolly and fully before doing so." What does this mean? Does it mean that defendant aided Bivens in forming Bivens' mental processes of considering taking the life of Susie Hawkins? That is what it seems to say. There is no evidence to support any such aid by defendant, even if it were an element of capital murder, as it is not. Does it mean that defendant aided Bivens in Bivens' reflecting upon the matter coolly and fully? Again this is what it seems to say and again there is no such evidence. It is highly questionable to me that "a jury composed of average lay people", *Arthur v. Royse, supra,* could understand this instruction.[3]

There is also another error in the use of the "in that" submission of instruction no. 7. By starting each fact issue with the words "in that", which is similar to "because" or "by",[4] the instruction assumes the facts in issue. That is, it assumes that Bivens with the aid of defendant shot Susie Hawkins, that Bivens with the aid of defendant intended to take her life, that Bivens with the aid of defendant knew he was practically certain to cause her death and that Bivens with the aid of defendant considered taking her life and reflected coolly and fully before doing so. This leaves to the jury the sole determination of whether or not the assumed facts constituted capital murder. This clearly is reversible error. *See State v. Durio,* 512 S.W.2d 833 (Mo.App.

---

3. A clear and legally accurate instruction would have been the following:

> If you find and believe beyond a reasonable doubt:
> First, that on the 5th day of February, 1979, Hardy Bivens caused the death of Susie Hawkins by shooting her, and
> Second, the defendant with the purpose of promoting the killing of Susie Hawkins aided Hardy Bivens in killing her, and
> Third, the defendant intended to take the life of Susie Hawkins, and
> Fourth, the defendant knew the conduct of Hardy Bivens was practically certain to cause the death of Susie Hawkins, and
> Fifth, the defendant considered taking the life of Susie Hawkins and reflected upon this

matter coolly and fully before aiding Hardy Bivens in killing Susie Hawkins,
then you will find the defendant guilty of capital murder.

> However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing propositions, you must find the defendant not guilty of that offense.

4. *See Frace v. Long Beach City High School District,* 58 Cal.App.2d 566, 137 P.2d 60 (1943) where the court, quoting Webster's New International Dictionary (1942 ed.) stated "in that" means "because, for the reason that." *Id.* 137 P.2d at 62.

1974), where the defendant's conviction for careless and imprudent driving was reversed because the instruction submitted assumed a controverted material fact. The jury in *Durio* was instructed that if it found and believed that defendant "did wilfully and unlawfully operate . . . in a careless and imprudent manner *by failing to exercise the highest degree of care in making a left turn from the right hand lane . . . .*" *Id.* at 834. This was prejudicial error because "[a] reasonable reading of Instruction No. 4 shows that it assumes that the turn in issue was indeed made from the right-hand lane and leaves to the jury the sole determination of whether or not this assumed act was careless and imprudent." *Id.*

Next, even if the jury could figure out the instruction, it does not accord with the basic principles of criminal liability set out in Chapter 562. Section 562.011 provides that "[a] person is not guilty of an offense unless his liability is based on conduct which includes a voluntary act." Section 562.016 provides in part that "a person is not guilty of an offense *unless he acts with a culpable mental state.*" (Emphasis added.) This section codifies a long-standing legal principle that was restated by the United States Supreme Court in *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

> The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil.

*Id.* at 250, 72 S.Ct. at 243. *See also State v. Clark*, 615 S.W.2d 55, 58 (Mo. banc 1981) (Donnelly, J., dissenting); *People v. Aaron*, 409 Mich. 672, 299 N.W.2d 304, 316 (1980) (" 'If one had to choose the most basic principle of the criminal law in general . . . it would be that criminal liability for causing a particular result is not justified in the absence of some culpable mental state in respect to that result . . . .' ").

Sections 562.011, .016, .036, .041.1(2), and .051, which apply to crimes committed after January 1, 1979, set forth the basic principles of accessorial liability.[5] Even before the enactment of the 1979 code, Missouri courts generally recognized that an aider, before he could be held criminally liable, had to have the intent to aid, *State v. Grebe*, 461 S.W.2d 265, 268 (Mo. banc 1970), and the intent required for the underlying crime, which usually was expressed as an intent held in common with the other participants. *State v. Goodman*, 482 S.W.2d 490, 492 (Mo.1972). The new code explicitly states the mental state requirements of accessorial liability and expresses "the prevailing view . . . that the accomplice must also have [in addition to the intent to aid] the mental state required for the crime of which he is to be convicted on an accessory theory." W. LaFave & A. Scott, Criminal Law § 64, at 506 (1972). Section 562.036 provides that "[a] person *with the required mental state* is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is criminally responsible . . . ." (Emphasis added.) Section 562.041.1(2) provides that "[a] person is criminally responsible for the conduct of another when . . . [e]ither before or during the commission of an offense *with the purpose of promoting* the commission of an offense, he aids . . . such other person . . . ." (Emphasis added.) Section 562.051 provides that "when two or more persons are criminally responsible for an offense which is divided into degrees, *each person is guilty of such degree as is compatible with his own culpable mental state . . . .*" (Emphasis added.)

---

5. "The Code's [1979 Missouri Criminal Code] most notable features are the state of mind requirements. By providing that a defendant's punishment shall be assessed according to his personal culpability rather than that of a third party, it aligns Missouri accomplice liability theory with accepted principles of modern criminal justice." Comment, Accomplice Liability Under the 1979 Missouri Criminal Code, 44 Mo.L.Rev. 233, 268 (1979).

I believe that the appellant is correct in his contention that these statutes require the state to plead and prove that the inactive participant had the intent to aid the active participant *and* the intent of the underlying crime and that the jury must be so instructed. In *Reece v. State*, 521 S.W.2d 633 (Tex.Cr.App.1975), there was evidence sufficient to convict both defendants of aggravated robbery. Nevertheless, the jury convicted the inactive participant of "simple" robbery and the active participant of aggravated robbery under an accessorial statute similar to that of Missouri. The active participant challenged his conviction, claiming that the jury had to find the two defendants equally guilty. The court, in overruling this argument, stated that "a jury may find one defendant guilty of a lesser included offense and another defendant guilty of the greater offense." *Id.* at 635. *See generally* Comment, Accomplice Liability Under the 1979 Missouri Criminal Code, 44 Mo.L.Rev. 233 (1979). This is because accessorial liability is a means of imputing only the conduct of the active participant, not his mental state. Thus, the mental state of the active participant cannot be substituted for that of the aider in instructing the jury in a prosecution for an offense divided into degrees. This must be contrasted with the situation in *State v. Lute*, 608 S.W.2d 381 (Mo. banc 1980), where the conviction of the inactive participant was reversed because the active participant's mental state was not included in the verdict director. Under § 556.170, RSMo 1969, the active participant's mental state had to be submitted to the jury because that statute, since repealed, provided that the accessory before the fact was, upon conviction, to be found guilty in the same degree as the principal. Now, under § 562.-051, it is expressly declared that where there is criminal responsibility of two or more persons for an offense which is divided into degrees (as is true here where

second degree and manslaughter verdicts were submitted as well as capital murder) "each person is guilty of such degree *as is compatible with his own culpable mental state*." (Emphasis added.) This is a change from § 556.170, RSMo 1969 and it applies to the present case.[6] Under the principal opinion, however, the law on accessorial liability is returned to what it was under § 556.170, RSMo 1969. This is contra to the new code.

I am unsure whether the principal opinion shares my belief that, to be convicted of a crime as an inactive participant, the jury must find that the defendant has the intent to aid and the intent of the underlying crime. At 944, the principal opinion states that "[i]n appellant's view an aider must have two intents [the intent to aid and the intent of the underlying offense charged], and the jury must be so instructed." At 944, the principal opinion states that "[a]ppellant's reading of this statutory scheme is too broad in the sense that he views it as requiring the jury to find two specific intents. If the Legislature had intended to require an aider to have a dual intent, it would have said so in the statutes." At 945, the principal opinion, citing with approval *State v. Grebe*, 461 S.W.2d 265 (Mo. banc 1970), states, "this Court held that the intent to aid or purposeful aiding is an essential element of aider liability." Then, at 946, the principal opinion states that "the jury necessarily found that defendant had the same intent as the active participant, Hardy Bivens." Thus, the logical conclusion from the opinion is that the jury had to find two intents, the intent to aid and "the same intent as the active participant," *i. e.*, the intent necessary for the underlying offense, but was not required to be told in the instructions it was to do this.

Be that as it may, the principal opinion concludes that because the jury was in-

**6.** Supplemental Notes on Use under MAI-CR2d 17.00.7 states: "The new Criminal Code repealed Section 556.170, effective January 1, 1979, and enacted Sections 562.036, 562.041, 562.046, 562.051 and 562.061 on the subjects of responsibility for the conduct of another . . . ."

structed in paragraph Second of No. 7 that the defendant "with the purpose of promoting its commission aided Hardy Bivens in committing that offense [capital murder]" and, under instruction no. 7, found the defendant guilty of capital murder, it "necessarily found that defendant had the same intent as the active participant, Hardy Bivens." At 946. The opinion goes on to state that "[t]he jury was free to find the defendant did not purposely aid in premeditated murder because it was instructed as to lesser degrees of homicide and further so instructed by Instruction No. 6." *Id.*

I cannot agree with the conclusion of the principal opinion that the jury necessarily found that the defendant had the required mental state for a conviction of capital murder or that the jury was free to find the defendant guilty of a lesser offense. As will be seen by looking at the three verdict directing instructions, what this defendant is guilty of under these instructions is what the jury believes Bivens is guilty of. The jury was not free to find defendant guilty of any lesser degree of homicide than that committed by Bivens.

Each instruction provides that if the jury finds Hardy Bivens committed the offense of capital murder (No. 7) or second degree murder (No. 9) or manslaughter (No. 11), then the jury *will* find the defendant guilty of the offense *committed by Bivens.* While the import of the principal opinion is that the jury was to consider the defendant's guilt or innocence as to the various degrees of offenses independently from others liable and that the jury was free to find defendant guilty of a lesser offense than Bivens, the way the instructions were written, the jury could not do so. In order to find defendant guilty on any of the offenses submitted the jury had to find Bivens guilty of the same offense. There was no instruction under which the jury could find defendant guilty of a lesser offense than that committed by Bivens, although there was an abundance of evidence under which defendant could have been found guilty of

a degree of homicide lesser than capital murder.

This produces a conflict with instruction no. 6 (MAI-CR2d 2.14). No. 6 tells the jury that "when two persons are criminally responsible for an offense which is divided into greater and lesser offenses, each such person is guilty of that offense, greater or lesser, which is compatible with the state of mind with which he acted . . . ." As shown above, however, the jury was precluded under the instructions given from finding defendant guilty of anything other than the offense committed by Bivens. Such a conflict is reversible error. *See State v. Banks,* 258 Mo. 479, 492, 167 S.W. 505, 509 (1914). *See also Herr v. Ruprecht,* 331 S.W.2d 642, 652 (Mo.1960) (Storckman, J., concurring); *Wabash Railroad Co. v. Dannen Mills, Inc.,* 365 Mo. 827, 830, 288 S.W.2d 926, 927 (Banc 1956). The jury could not comply both with instruction no. 6 and the verdict directors.

Additionally, use of "will" instead of "may" in the verdict directors further exacerbates the prejudicial effect of taking away any option, on the part of the jury to find that Bivens and defendant were not culpable to the same degree. The state concedes the use of "will" was error, but that it was not prejudicial, with which the principal opinion agrees, saying that "if the jury understood it could consider defendant's liability as to each degree, then the use of 'will' instead of 'may' has no prejudicial effect". But as said, the verdict directors contradicted instruction no. 6 and gave the jury no opportunity to consider defendant's liability other than as it paralleled Bivens' liability. It is difficult to conceive how it can be concluded that the state has clearly demonstrated that the error was not prejudicial.

The defendant, in an effort to focus the attention of the jury on his mental state rather than that of Hardy Bivens, submitted a converse instruction, instruction no. B, which the court refused to give:

> If you do not find and believe from the evidence beyond a reasonable doubt that

the Defendant did consider taking the life of Susie Hawkins and did reflect upon this matter coolly and fully before doing so, you must find the Defendant not guilty of Capital Murder.

This instruction conversed what the defendant obviously considered the weakest element of the state's case—the deliberate intent required for a conviction of capital murder. It ties in closely with the law stated in § 562.051 that when there is an offense divided into degrees, a defendant is guilty of such degree "as is compatible with his own mental state". It also is consistent with instruction no. 6, MAI-CR2d 2.14, which informed the jury when two persons are involved each person is guilty of the offense "which is compatible with the state of mind with which he acted."[7] Likewise, if the format suggested in note 3 were also used for the second degree and manslaughter submissions, it would be possible for the jury to find defendant guilty of a degree of the offense lesser than that of the principal, and would eliminate the conflict with instruction no. 6. The suggested format does not make the error of starting out with the conclusion as do instructions nos. 7, 9 and 11, that on the day in question Bivens with the aid of defendant committed capital murder (or second degree murder or manslaughter). That is what causes the trouble. Instruction no. B was refused because the trial court objected to the form of the converse and that the instruction failed "to include reference to Hardy Bivens as being the perpetrator with the aid or attempted aid of the Defendant." Although the proffered instruction was not artfully drafted, its refusal, I believe, was error because it negated a crucial mental element of the state's case against defendant. What was said in *State v. McWilliams*, 331 S.W.2d 610

(Mo.1960) is certainly true here. "The instructions given by the court may have abstractly covered the subject of intent but the defendant was entitled to a factual, affirmative converse hypothesization which is not to be found in the instructions given." *Id.* at 613.

In response to all of defendant's contentions that the jury was erroneously instructed, the principal opinion concludes that because the jury was instructed in paragraph Second that the defendant "with the purpose of promoting its commission aided Hardy Bivens in committing that offense [capital murder]" and, under this instruction, found the defendant guilty of capital murder, it "necessarily found that defendant had the same intent as the active participant, Hardy Bivens." At 946. The principal opinion implies that because paragraph Second was submitted to the jury, it cured any and all wrongs there were in the other portions of the instruction.

Defendant was entitled to a direct and explicit submission of the vital issue of whether he realized what Bivens was going to do and deliberately set about helping him. Bivens put seven shots into Susie Hawkins' head. The first portion of instruction no. 7—the part with all the "in thats"—concentrates on Bivens and Bivens' actions, at which the jury must have been aghast. Then paragraph Second, the only paragraph devoted to the defendant's actions, glosses over the matter without calling upon the jury to determine, in the words of Section 562.016.2 (which defines "acts purposely"),[8] that it was defendant's conscious object to bring about the end result. The paragraph Second of instruction no. 7, a not in MAI instruction, was too subtle and imprecise to cure the many errors in the first part of the instruction, and

**7.** This was not an easy case for the jury under the instructions and the evidence. The jury retired at 2 p. m. They did not reach a verdict until 12:20 a. m. the following morning. In the interim the jury had come in twice to ask questions, first at 2:20 p.m. and again at 6:42 p.m. Both times they were referred back to the instructions.

**8.** Section 562.016.2 provides that "[a] person 'acts purposely' . . . with respect to his conduct or to a result thereof when it is his conscious object to engage in that conduct or to cause that result."

failed to present squarely and fairly the issue of defendant's intent.

I would reverse and remand so that Michael White could have a fair trial by a jury that was properly instructed. Whether this court believes the conflicting evidence as to defendant's involvement, is irrelevant, because "[w]here *intent of the accused is an ingredient of the crime charged*, its existence is a question of fact which must be submitted to the jury." *Morissette v. United States*, 342 U.S. at 274, 72 S.Ct. at 255 (emphasis added). "Of course, the jury . . . [considering the defendant's testimony] might have disbelieved his profession of innocent intent . . . . Had the jury convicted on proper instructions it would be the end of the matter. But juries are not bound by what seems inescapable logic to judges . . . . Had they done so [refused to convict], that too would have been the end of the matter." *Id.* at 276, 72 S.Ct. at 256.