**STATE of Missouri, (Respondent),**

v.

**Randy ELAM, (Appellant).**

**No. WD 33514.**

Missouri Court of Appeals,
Western District.

Dec. 14, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Feb. 1, 1983.

Application to Transfer Denied March 29, 1983.

Gary E. Ravens, Marceline, for appellant.

John Ashcroft, Atty. Gen., Priscilla Gunn, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, C.J., CLARK, J., and MOORE, Senior Judge.

CLARK, Judge.

Randy Elam was convicted of the offense of passing a bad check, § 570.120, RSMo 1978, and he was sentenced as a persistent offender to a term of five years. Reversed.

On this appeal, Elam contends the evidence produced by the state made no submissible case against him. We agree and therefore consider only incidentally his second point that the state's verdict directing instruction was erroneous because essential elements of the offense were omitted. The two points are, however, associated because the proof and the instruction were both deficient in the same respect.

The transaction in question was one in which Elam and a female companion, Jacqueline J. Cordillo, purchased a used truck on July 15, 1981 from Briggs-Cupp Chevrolet in Marceline. The only witness to testify about the purchase was Bob Dean Cupp, a proprietor of the business. According to Cupp, Elam and Cordillo came to the automobile agency to buy a vehicle and selected a 1973 Chevrolet pick-up. The price agreed upon was $2,250.00 to which was added $23.00 for gasoline to fill the truck's fuel tank. Cordillo made out a check in the amount of $2,273.00 drawn on her account at the Macon-Atlanta Bank in Macon, Missouri and delivered the check to Cupp. At the request of Elam and Cordillo, papers for processing the vehicle title were made out in the names of Randy and Jacqueline Elam, the explanation being offered that the two had been married only weeks before and Jacqueline had not yet changed the name on her bank account.

The Cordillo check was deposited in due course by Briggs-Cupp but was returned within a few days by the drawee bank because Cordillo had insufficient funds in her account. Cupp promptly confronted Elam and Cordillo but was informed by Elam that $7500.00 in cash had been deposited to the account in a night deposit facility and some mistake had evidently been made by the bank. Elam assured Cupp that they would "straighten it out." Further attempts by Cupp to collect the funds did not prove successful and the present charge was lodged.[1]

Additional evidence at trial included the records of Jacqueline Cordillo's account at the Macon-Atlanta Bank from March 31 to August 27, 1981. The account showed an

1. The record here does not disclose if Jacqueline Cordillo was prosecuted or, if so, what result followed.

overdrawn balance throughout and numerous returned checks including the one to Briggs-Cupp. Two deposits were reflected to the account, $233.58 in April and $675.00 in July. The pick-up truck was not recovered but was traced to Colorado where, according to Cupp, Elam and Cordillo "had traded it off."

Prior to the purchase of the truck, Cordillo was not a person known to Cupp, but he was acquainted with Elam because of some "garage work." There was, however, no evidence that Cupp relied upon or that Elam made any representations as to Cordillo's financial responsibility or that Elam was knowledgeable as to the status of Cordillo's bank account.

In his first point, Elam asserts that the state's verdict directing instruction was erroneous because it authorized a guilty verdict without requiring proof of knowing participation by Elam in the issuance or passing of the bad check. The second point contends the state's case failed because there was no evidence Elam knew the check Cordillo issued would not be paid. The instruction given read as follows:

"If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about the 15th day of July, 1981, in the County of Linn, State of Missouri, Jacqueline J. Cordillo, with purpose to defraud, passed to Briggs-Cupp Chevrolet, a Missouri Corporation, a check in the amount of Two Thousand Two Hundred Seventy-three and no/one-hundredths ($2,273.00) Dollars, drawn upon the Macon-Atlanta State Bank of Macon, Missouri, dated July 15, 1981, payable to Briggs-Cupp Chevrolet, and

Second, that at the time Jacqueline J. Cordillo passed such check she knew it would not be paid, and

Third, that the check was made out in an amount of at least One Hundred Fifty ($150.00) Dollars, and

Fourth, that defendant, Randy Elam, aided and/or agreed to aid Jacqueline J.

Cordillo in the conduct submitted in the above paragraphs,

then you will find the defendant guilty of passing a bad check."

Elam was here charged under § 562.041, RSMo 1978 as an aider and abettor to Jacqueline Cordillo in the offense of passing a bad check. This latter offense is defined by § 570.120, RSMo 1978 as issuing a check with purpose to defraud knowing the check will not be paid by the drawee. As to aiders and abettors, § 562.041 fixes criminal responsibility for the act of another where it is shown that the accused, although not himself a principal, aided or attempted to aid in the planning, committing or attempting to commit the offense with purpose to promote consumation of the offense. The offense of passing a bad check by statutory definition requires proof of a particular culpable mental state, the intent to defraud.

In *State v. White,* 622 S.W.2d 939 (Mo. banc 1981), cert. denied, 456 U.S. 963, 102 S.Ct. 2040, 72 L.Ed.2d 487, (1982) the court discussed aider and abettor responsibility for criminal acts, particularly as to the extent and degree of culpable mental state essential to conviction. Quoting from *State v. Grebe,* 461 S.W.2d 265 (Mo.banc 1970), the court noted that prior to the adoption of the new criminal code, an essential element of aider liability is an intent to aid, that is, those who act together share consciously in the criminal act as something they intend to bring about. The court then concluded that the new criminal code has followed the pre-existing common law and has restated the same principles announced in *State v. Grebe.* In the language of *State v. White,* "Therefore to be found guilty of a particular offense, an aider must aid another or others with the conscious object of causing that offense. A finding that the aider had this intent is equivalent to finding that the aider and active participant shared a common intent or purpose." *State v. White, supra,* 622 S.W.2d at 945.

■ The criminal purpose of passing bad checks is the intent to defraud. The es-

sence of the crime's principal ingredient is knowledge that the check tendered will not be honored, that the consideration ostensibly paid is in fact worthless. Where fraudulent intent is an element of the crime, there must be in connection with the act done attending circumstances which bespeak fraud and proof that the intent to defraud existed as of the time the pretense was made. *State v. Inscore,* 592 S.W.2d 809, 811 (Mo.banc 1980).

In the present case, the state relied on several facts to establish responsibility on Elam as an aider and abettor to the offense of passing a bad check committed by Cordillo. Those facts, to which their brief calls attention are: (1) Elam participated in selecting the truck to be purchased (2) Elam was nearby when Cordillo wrote the check to pay for the purchase (3) Elam falsely told Cupp that he and Cordillo were recently married (4) Elam shared in the profits from the scheme because his name was placed on the title to the vehicle, and (5) Elam later implicated himself by claiming a deposit had been made to the Cordillo bank account.

■ None of the facts above summarized, or any other evidence in the case, sufficed to make a submissible case against Elam because the evidence failed to offer any basis for the conclusion that Elam possessed any knowledge, at the time the check was drawn, as to the state of Cordillo's bank account. The bank records showed Cordillo's name alone on the account, there was no suggestion Elam had access to or had ever seen bank statements on Cordillo's account and no showing Cordillo discussed her finances with Elam or that they had any monetary community of interest. In short, the record cannot support a finding that Elam knew the check given Cupp would not be paid.

By definition, the intent to defraud in the offense of passing a bad check emanates from knowledge that the check given will be dishonored when presented for payment.

Because an aider or abettor must possess the same intent as the actor, that is, the intent to defraud as the purpose of the criminal act, the aider or abettor must also be shown to possess knowledge the check is not drawn on available funds. Absent conscious knowledge of the criminal purpose, no case is made against the accused charged as an aider. The state failed to make a case here because the proof was entirely wanting in this element.

The state additionally argues that Elam's presence at the time and his obvious association with Cordillo were enough to show a common design or purpose in which Cordillo was the active partner issuing the worthless check. Without limiting the prior analysis of culpable mental state necessary to establish guilt of an aider or abettor, it is to be noted that no act of Elam aided Cordillo in passing the bad check. Irrespective of criminal intent, Elam was not shown to have committed any act which furthered the criminal purpose. Cupp testified to no reliance upon his acquaintanceship with Elam as a factor inducing him to accept Cordillo's check nor did Elam make any representations or guarantees. Although Elam was present, did join in the request for issuance of a title in joint names and falsely represented his marriage to Cordillo, none of those actions demonstrably or inferentially influenced Cupp to take Cordillo's check. As to the later statement by Elam about a deposit to Cordillo's account, that occurred after the offense had been consummated and obviously played no part in Cupp's previous action in accepting the check in payment for the purchase.

■ Before a defendant may be found guilty as an aider or abettor, the state must prove beyond a reasonable doubt that the defendant either before or during commission of the offense and with the purpose of promoting its commission aided or agreed to aid or attempted to aid in planning, committing or attempting to commit the offense. *State v. Gallimore,* 633 S.W.2d 232, 237 (Mo.App.1982). The state offered no

such proof here, much less proof beyond a reasonable doubt, and for lack of evidence that Elam aided Cordillo in passing the bad check, a submissible case was not made.

As to the claim of instruction error, the point becomes moot by reason of our conclusion that the defendant was entitled to an acquittal at the close of the evidence. The verdict directing instruction reproduced earlier in this opinion indicates, however, a fundamental misconception as to proof and submission of a charge against an aider or abettor pursuant to § 562.041, RSMo 1978. The point therefore justifies mention.

All instructions given in this case were not included in the legal file supplied, only the instruction quoted. From the state's brief, it appears an instruction patterned on MAI–CR2d 2.10 was also given and from these two instructions, the state argues there was described "the threshold for the jury to find appellant guilty of passing a bad check." Reference by the state to no other instruction suggests that MAI–CR2d 2.12 was not given.

The verdict directing instruction earlier quoted authorizes conviction of Elam upon a finding that Cordillo knew the check she issued would not be paid and that Elam aided Cordillo in passing the bad check. MAI–CR2d 2.10 adds the instruction that one may be criminally responsible for the conduct of another when he aids in the commission of the offense and that presence at the scene, while not alone sufficient, may be considered on the issue of guilt. The jury thus had no instruction on the issue of whether Elam acted to aid Cordillo with the purpose of promoting commission of the offense. Under the instructions as given, the jury was entitled to convict, as they apparently did, only upon evidence that Cordillo knew the check would not be paid and Elam was present when the check was drawn and delivered.

The MAI–CR2d *Notes on Use* appended to MAI–CR2d 2.10 require, when the evidence shows the defendant to have acted with others, either as an active participant or one who aided in committing the offense, that MAI–CR2d 2.10 *and* MAI–CR2d 2.12

must be given whether requested or not. In this case, paragraph second of MAI–CR2d 2.12 would have postulated the elements of the offense omitted from the instructions as given, as follows:

"Second, that Randy Elam, either before or during the commission of the offense of passing a bad check, with the purpose of promoting its commission, aided Jacqueline Cordillo in committing that offense."

The instruction which should have been given in a form comparable to that suggested above serves to focus attention on the elements of the charge, acts performed with the purpose of promoting the passing of the bad check, and demonstrated the deficiency, both in the proof adduced by the state and in the instructions actually given.

The judgment of conviction and sentence are reversed and defendant is ordered discharged. *State v. Barber,* 635 S.W.2d 342 (Mo.1982).

All concur.