

# In the Missouri Court of Appeals
## Eastern District
### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No.ED105925 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Ste. Genevieve County |
| vs | ) | |
| | ) | Hon. Sandra Martinez |
| ROBERT T. BYINGTON, | ) | |
| | ) | Filed: |
| Appellant. | ) | March 12, 2019 |

Robert Byington ("Defendant") appeals from the judgment entered on his conviction after a jury trial for one count of lien fraud. We affirm.

Viewed favorably to the State, the evidence at trial showed the following. Seborn Cole hired Defendant to hang drywall at his home in Ste. Genevieve County on August 21, 2006. The proposal was $23,875 for labor and material, which Cole accepted. Cole paid Defendant on that date for the materials, as confirmed by Defendant's note on the contract: "$8,500 material draw to start, paid 8-21-06, check number 12373." Defendant told Cole he needed that $8,500 to purchase materials from a supplier in St. Louis, but that is not what Defendant did. Instead, he deposited that check two days later into his business account and paid off other outstanding bills. One outstanding bill was for materials on a previous job purchased from the local building materials supplier, Farmington Building Supply, which Defendant paid off on September 19. A few days later, Defendant finally placed the first order for materials for the Cole job from Farmington. Cole had testified

that Defendant told him the month-long delay was because he was having trouble getting the supplies from St. Louis, which caused him to change his mind and use Farmington. He did not tell Cole that he had spent the materials money on other things.

The owner of Farmington testified that from September 25 through October 25, 2006, Defendant made orders from Farmington for the Cole project on credit. Defendant did not tell Farmington that he had actually already been paid for those materials, and thus had he not spent it on other things, could have purchased those materials cash on delivery. Defendant has never paid Farmington anything for those materials.

Defendant completed the work on Cole's home on November 3, 2006. Cole fully paid Defendant for all that work and obtained lien waivers from Defendant. Defendant did not tell Cole that he had not paid Farmington for the materials, nor did he explain that the lien waivers did not protect Cole from lien claims by Farmington, though Defendant knew at the time he signed them that Farmington had not been paid. At the end of November or early December of 2006, Farmington learned that Defendant had finished the Cole project and had been fully paid, but had failed to pay Farmington. Eventually, Farmington filed a lien on Cole's property.

Defendant testified at trial that he had no intention of never paying Farmington. The jury did not accept this defense and found him guilty of lien fraud under Section 429.014.1. The trial was in 2011, and after his conviction, the court suspended imposition of sentence, placing Defendant on probation for five years and ordering him to pay over $12,000 in restitution. Defendant absconded for several years but turned himself in August of 2017, admitting violations of the terms of his probation. The court revoked probation and deferred sentencing for a month to allow Defendant to pay some of the restitution he

2

still owed. Defendant failed to make any payments, and the court declined his request for further extensions. The court sentenced him to seven years' imprisonment. This appeal follows.[1]

All three of Defendant's points on appeal relate to the requisite mens rea to commit lien fraud under Section 429.014, namely the "intent to defraud":

> Any original contractor, subcontractor or supplier who fails or refuses to pay any subcontractor, materialman, supplier or laborer for any services or materials provided pursuant to any contract referred to in section 429.010, 429.012 or 429.013 for which the original contractor, subcontractor or supplier has been paid, with the intent to defraud, commits the offense of lien fraud, regardless of whether the lien was perfected or filed within the time allowed by law.

Section 429.014.1. Defendant admits that he was the original contractor and that the evidence showed he committed the actus reus of this crime: he failed to pay a supplier, here Farmington, for materials provided pursuant to a contract to provide work on Cole's home for which Defendant had been paid. But he contends there was insufficient evidence of his intent to defraud *Farmington*, and evidence that might show he intended to defraud *Cole* is insufficient evidence of his intent with respect to Farmington. Thus, he asserts in his first point that the trial court erred in not granting his motion for acquittal at the close of evidence and, in his second point, that the State's arguments that intent to defraud was proven by Defendant's misrepresentations to Cole were improper. In his third point on appeal, Defendant argues that the court abused its discretion in excluding evidence of his

---

[1] We decline the State's invitation to dismiss this appeal under the escape rule. "The judicially-created escape rule operates to deny the right of appeal to a defendant who escapes justice. Whether or not to use the escape rule to dismiss an appellant's claims of error rests within the sound discretion of the appellate court." *Townsend v. State*, 495 S.W.3d 225, 228 (Mo. App. E.D. 2016). We never condone absconding from justice, but even when it would be within our discretion to invoke the escape rule, we often prefer to address the merits of the appeal. *See id*; *see also State v. Thomas*, 466 S.W.3d 44, 47 (Mo. App. W.D. 2015).

intent to pay off his debt to Farmington after the Cole job ended with the profits of a subsequent job.[2]

Each point depends in some way on our interpretation of the lien fraud statute. Statutory interpretation is a question of law that we review de novo. *State v. Haynes*, 564 S.W.3d 780, 784 (Mo. App. E.D. 2018). Our goal is to ascertain the intent of the legislature from the plain and ordinary meaning of the language used in the statute. *Id*. Though it was enacted over 30 years ago, we have found no appellate case involving a criminal prosecution for lien fraud under Section 429.014.1.[3] While we are the first court to interpret the meaning of "intent to defraud" in this statute, the plain and ordinary meaning of that mental state in other crimes is well-established. "Intent to defraud" means having the purpose or design to deprive someone of a lawful right, interest or property by fraudulent means. *State v. Harris*, 313 S.W.2d 664, 670 (Mo. 1958) (applying definition to Section 560.270, now repealed, receipt of stolen property "with intent to defraud"); *see also State v. Ciarelli*, 366 S.W.2d 63, 67 (Mo. App. 1963) (same); *State v. Morin*, 873 S.W.2d 858, 865–66 (Mo. App. S.D. 1994) (applying definition to Section 407.020, unlawful practices done "with intent to defraud"); *State v. Sinner*, 779 S.W.2d 690, 694 (Mo. App. E.D. 1989) (applying definition to Section 143.931, failure to file tax return

---

[2] Underlying all of Defendant's arguments on appeal is his frustration with having been charged with a crime in the first place, pointing out that there are civil remedies available to protect and provide relief to both the homeowner and the unpaid supplier in this situation. But, of course, a duly-elected prosecutor has broad discretion to determine when, if and how criminal laws are to be enforced. *See State v. Honeycutt*, 96 S.W.3d 85, 89 (Mo. banc 2003). And the jury is tasked with weighing the evidence of that crime at trial. The limits of our judicial review simply do not allow for second-guessing the prosecutor or the jury on those matters, even if we disagree with them.

[3] We have found only passing mention of this crime in two civil cases. *See John Knox Village v. Fortis Construction Company, LLC*, 449 S.W.3d 68, 76–77, n.2 (Mo. App. W.D. 2014) (noting trial court's reference to the crime); *Carlund Corporation v. Crown Center Redevelopment*, 849 S.W.2d 647, 650 (Mo. App. W.D. 1993) (noting, but not addressing, party's argument on appeal that under Section 492.014, a contractor hold funds paid to them "in trust" for the benefit of the subcontractors and suppliers).

with "intent to defraud"); *State v. Wade*, 815 S.W.2d 489, 491 (Mo. App. S.D. 1991) (applying definition to Section 570.090, acts of forgery committed "with the purpose to defraud").

Here, the parties do not disagree about what it means to have the intent to defraud, they disagree about *who* the defendant must intend to defraud in a lien fraud case. Defendant contends that because Farmington is the identified victim of the crime, the State must show that he intended to defraud Farmington. The State argues that general intent to defraud is sufficient, likening this case to a forgery. We agree with Defendant.

When fraudulent intent is an element of the crime, there must be "in connection with the act done attending circumstances which bespeak fraud;" that is, a "situation where common experience finds a reliable correlation between the act and a corresponding intent." *State v. Inscore*, 592 S.W.2d 809, 811 (Mo. banc 1980) (discussing 561.450, so-called "confidence game statute," now repealed); *see also State v. Elam*, 646 S.W.2d 834, 836–37 (Mo. App. W.D. 1982) (discussing Section 570.129, crime of passing bad checks); *State v. Thurman*, 692 S.W.2d 317, 318 (Mo. App. E.D. 1985) (discussing stealing by deceit, Section 570.030). Thus, for lien fraud under Section 429.014.1, there must have been a correlation between the act of failing or refusing to pay the subcontractor, materialman, supplier or laborer and the intent to defraud. Because the actus reus in this statute is specific to a particular individual—i.e. the subcontractor, materialman, supplier or laborer—the intent to defraud must correspond to the failure to pay that particular person. In this way, lien fraud is unlike the forgery statute, in which the acts that constitute forgery are *not* specific to a particular individual. *See* Section 570.090.[4] Our courts have

---

[4] The forgery statute provides:

A person commits the offense of forgery if, with the purpose to defraud, the person:

5

said that forgery can be proven by evidence of general intent to defraud and the State "need not prove the specific intent to defraud some particular person;" in fact, intent to defraud can be inferred from the act of forgery itself. *State v. Smothers*, 297 S.W.3d 626, 633 (Mo. App. W.D. 2009); *see also State v. Johnson,* 855 S.W.2d 470, 473 (Mo. App. W.D. 1993). But for lien fraud, the intent to defraud must correlate to an actus reus that has a specific victim and thus the intent must be to deprive that particular person of his property by fraudulent means.

We turn now to the first point on appeal: the sufficiency of the evidence of Defendant's intent. There is direct evidence that Defendant was dishonest with Cole, which Defendant insists shows, at worst, an intent to defraud *only* Cole. But like all subjective mental states, "intent to defraud" is rarely capable of proof by direct evidence and may be—and usually is—proven entirely by circumstantial evidence. *See Inscore*, 592 S.W.2d at 811. Defendant's behavior with Cole relating to the payments that were supposed to be made to Farmington is relevant circumstantial evidence the State was permitted to rely upon to prove Defendant's intent to defraud Farmington.

From the outset, Defendant affirmatively lied to Cole about how he would use the $8,500 Cole gave him for materials—telling Cole he was going to use it to buy materials

---

(1) Makes, completes, alters or authenticates any writing so that it purports to have been made by another or at another time or place or in a numbered sequence other than was in fact the case or with different terms or by authority of one who did not give such authority; or
(2) Erases, obliterates or destroys any writing; or
(3) Makes or alters anything other than a writing, including receipts and universal product codes, so that it purports to have a genuineness, antiquity, rarity, ownership or authorship which it does not possess; or
(4) Uses as genuine, or possesses for the purpose of using as genuine, or transfers with the knowledge or belief that it will be used as genuine, any writing or other thing including receipts and universal product codes, which the person knows has been made or altered in the manner described in this section.

Section 570.090.1.

from a supplier in St. Louis, thereby justifying Cole's payment directly to Defendant instead of to a local supplier, when he intended all along to put it in his own account and pay off past-due bills from suppliers for materials provided for other projects. By the time he went to Farmington to order the materials over a month after taking Cole's material draw check, Defendant had already spent that $8,500 for something other than those materials. Defendant, therefore, could not have had—at that time or anytime thereafter—the intent to pay Farmington for those materials with the money Cole gave him for that purpose. He did not tell Farmington that Cole had given him money for materials, which he could have used to buy the materials cash on delivery. Instead, he bought these materials on credit under these dishonest circumstances, which gave rise to the inference that he intended to deprive Farmington of its property by fraudulent means. Defendant had this intent to defraud from the moment Defendant took the $8,500 check from Cole with no intent to use it as promised and persisted through the completion of, and full payment for, the Cole job without paying Farmington for the materials. In other words, Defendant's intent to defraud existed at the time of and correlated directly to the failure to pay Farmington for the materials it provided and for which he had been paid.

Construed in the light most favorable to the State, and disregarding contrary evidence and inferences, these circumstances surrounding the failure to pay Farmington, and the inferences drawn therefrom, sufficiently showed beyond a reasonable doubt that Defendant acted with the requisite intent to defraud. *See generally State v. Porter,* 439 S.W.3d 208, 211 (Mo. banc 2014) (discussing standard of review on sufficiency claim). Point I is denied.

Defendant's second point charges the trial court with plain error for failing to sua sponte declare a mistrial or correct misstatements of law when the prosecutor in closing argument "repeatedly argued" that Defendant acted with the intent to defraud Cole. The record reveals that the State correctly told the jury that "intent to defraud" was undefined in the instructions and could be proven in myriad ways and then properly argued the circumstances that showed Defendant's intent in this case. The State never said that it had only to prove an intent to defraud Cole, that there need not be proof of intent to defraud Farmington; the prosecutor talked generally about intent to defraud and how Defendant's conduct as a whole showed that intent. As the above discussion illustrates, it was not error, plain or otherwise, for the State to rely on the facts regarding Defendant's misrepresentations to Cole as circumstantial evidence of his intent to defraud in connection with the failure to pay Farmington. Nor has Defendant remotely shown any manifest injustice or miscarriage of justice resulting from the State's closing arguments in this case, given that we have found the evidence was sufficient to support the conviction. Point II is denied.

In his third point, Defendant contends the trial court abused its discretion in limiting the evidence of his intentions to pay off the Farmington bill to the time period before the Cole job ended on November 3, 2006. Defendant argues that because the money for the materials was not even due, according to Farmington's invoices, until November 10, 2006, he should have been allowed to present evidence that he had started another job that was going to allow him to pay the Farmington bills before that due date. Even if that theory for the admission of this evidence was correct, Defendant did not actually present any testimony in his offer of proof that was probative of his intent to repay Farmington by

November 10.  The offer of proof contained at best an imprecise account of a job on a church that started, he *guessed*, a matter of weeks or months after the Cole job ended, from which he *hoped* to use the profits, *after* all the expense on the church job were paid, to repay Farmington.  In other words, that lucrative church job may have *started* around the time the Farmington bills came due in mid-November, but logically the profits from that job would not be realized until much later.  Therefore, on its face, the offer of proof contradicts Defendant's claim that there was evidence of a "thought-out, intentional plan as to how to pay this debt because he expected the profits from the church job to accrue around the time the bills from Farmington were due or a little past due."  Rather than evidence that would have buttressed his defense or negated a finding that he had the intent to defraud, the offer of proof was duplicative of Defendant's general defense that he had all along he intended to repay Farmington at some future date, as it was his practice to pay off past debts with future income.  This "robbing Peter to pay Paul" business practice simply did not convince the jury that Defendant lacked the intent to defraud, and there is nothing in the excluded testimony that is likely to have garnered a different result.

The trial court carefully and deliberately considered the scope of admissible evidence of intent, first during the pre-trial motion in limine hearing and again after this offer of proof at trial.  The decision to exclude it was not arbitrary or capricious or clearly against the logic of the circumstances, nor was Defendant deprived of a fair trial.  *See generally State v. Chandler*, 429 S.W.3d 503, 507 (Mo. App. E.D. 2014) (discussing standard of review on exclusion of evidence claim).  Point III is denied.

The judgment is affirmed.

ROBERT G. DOWD, JR., Judge

Philip M. Hess, P.J. and
Mary K. Hoff, J., concur.

10